172 F.3d 934
 Joyce TOLBERT, Venita Rodgers, Veronica Cherry, Laurel
Nemec, Patricia Nettles, and Stella Campbell,
Plaintiffs-Appellants,
v.
STATE OF OHIO DEPARTMENT OF TRANSPORTATION, Jerry Wray, and
City of Toledo, Defendants-Appellees.
 No. 98-3299.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 12, 1999.
Decided April 16, 1999.
 
 Olatunde C.A. Johnson (argued and briefed), NAACP Legal Defense & Educational Fund, New York, New York, William B. Senhauser (briefed), Equal Justice Foundation, Toledo, Ohio, for Plaintiffs-Appellants.
 Pamela J. Vest (argued and briefed), Office of the Attorney General, Transportation Section, Columbus, Ohio, Richard J. Makowski (briefed), Office of the Attorney General of Ohio, Cleveland, Ohio, Karen E. Asbury (briefed), Office of the Attorney General, Toledo, Ohio, for Defendants-Appellees except City of Toledo.
 Lourdes Santiago (briefed), Senior Attorney, Office of the City of Toledo Law Department, Toledo, Ohio, for Defendant-Appellee City of Toledo.
 Before: MERRITT, KENNEDY, and GILMAN, Circuit Judges.
 GILMAN, Circuit Judge.
 
 
 1
 Plaintiffs, who are residents of the Cherrywood apartment complex in Toledo, Ohio and predominantly African-American (the "Cherrywood residents"), claim that the Ohio Department of Transportation ("ODOT"), its director Jerry Wray, and the City of Toledo discriminated against them on the basis of race in allocating sound barriers along highways in Toledo. The district court ruled that their claims were barred by the applicable two-year statutes of limitation, finding that the Cherrywood residents' cause of action had accrued in 1984 when ODOT approved a highway-construction plan that did not include sound barriers near Cherrywood.
 
 
 2
 The complaint, however, challenges the discriminatory allocation of sound barriers, not the initial failure of ODOT to provide such barriers near Cherrywood. As a result, the Cherrywood residents' cause of action did not accrue until (1) the request for sound barriers in their largely African-American neighborhood had been denied, and (2) they knew or had reason to know that ODOT was in the process of providing sound barriers in a similarly-situated white neighborhood. We therefore REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.
 
 I. BACKGROUND
 A. The Plaintiffs
 
 3
 The Plaintiffs are residents of Cherrywood. According to a 1990 census, 84f the Cherrywood residents are African-American. Over 71% of the households in Cherrywood's census tract had annual incomes of less than $10,000.
 
 B. The Parkway
 
 4
 The Buckeye Basin Greenbelt Parkway (the "Parkway") is a federally-funded highway currently under construction in Toledo, Ohio. The northbound lanes of the Parkway are located approximately 75 to 100 feet from Cherrywood. Planning for the Parkway began in the 1970s. ODOT claims that it conducted 17 public meetings to discuss the Parkway project between 1979 and 1982, but the record is devoid of information about the notification procedures except for one of the public meetings in 1982. The Cherrywood residents allege that ODOT did not conduct any meetings specifically with them.
 
 
 5
 In the late 1970s and early 1980s, the Federal Highway Administration ("FHWA") conducted an initial noise analysis for the Parkway project. One such analysis indicated that the existing noise level at Cherrywood was approximately 79 decibels. The Cherrywood residents allege that the current specifications for the Parkway will elevate that noise level to 90 decibels, an increase of over 10 decibels. In 1982, the FHWA incorporated its noise analysis into an Environmental Impact Statement ("EIS"). The EIS recommended against building sound barriers around the Parkway because that would be impractical "due to the influence of traffic generating noise from Cherry Street and to the industrial background noise from the adjacent area." In 1984, the FHWA approved the EIS. Between 1984 and 1995, the FHWA made various changes to the Parkway plans. On January 19, 1995, the FWHA determined that because the changes were not "substantial," no supplemental EIS was necessary.
 
 
 6
 Construction of the Parkway began in 1996, and is ongoing. In 1996, the Cherrywood residents requested that ODOT reopen the question of whether to provide noise-mitigation measures on the Parkway project. ODOT officials refused to do so, stating that the Cherrywood residents could have attended the various public meetings in the 1980s.
 
 C. The I-75 Expansion
 
 7
 ODOT also made plans to widen Interstate 75 in Toledo in the 1980s. According to the 1990 census, 86% of the residents in the 18 census blocks immediately adjacent to the I-75 widening project (known as "Point Place") are Caucasian. Sixty percent of the households in the five adjacent census tracts had annual incomes of over $25,000.
 
 
 8
 According to a 1983 ODOT noise analysis, the widening of I-75 would result in noise levels between 70 and 82 decibels in the adjacent neighborhoods, creating an increase of no more than three decibels above the original sound level. The noise analysis recommended against the construction of sound barriers for the I-75 widening.
 
 
 9
 ODOT has nonetheless since decided to construct sound barriers adjacent to I-75. The Cherrywood residents allege that the City of Toledo was involved in this decision. Construction commenced in the summer of 1996.
 
 D. Procedural Background
 
 10
 The Cherrywood residents filed a six-count complaint in the United States District Court for the Northern District of Ohio on August 26, 1997. It named ODOT, its director Jerry Wray, and the City of Toledo as defendants. The complaint states in pertinent part as follows:
 
 Discrimination Against Plaintiff Class
 
 11
 19. In analyzing the noise impact of the Parkway, defendants, inter alia, incorrectly measured existing noise levels, failed to evaluate meaningfully noise abatement measures, and failed to take into consideration the views of the impacted residents in violation of 23 C.F.R. § 772.
 
 
 12
 20. In designing, approving, and constructing the Parkway, defendants failed to assess whether the allocation of sound mitigation measures and consideration of alternative Parkway alignments complied with Title VI, Title VIII, and other civil rights requirements.
 
 
 13
 21. Defendants failed to provide plaintiffs, the African-American population residing in the Cherrywood apartments and nearby residential properties, with sound mitigation measures or other design alternatives to lessen the noise impact of the Parkway. Plaintiffs allege that defendants' discriminatory refusal to approve sound mitigation measures or other design alternatives and defendants' discriminatory allocation of mitigation measures between Point Place and Cherrywood disproportionately imposes environmental and health burdens of freeway construction on the basis of race.
 
 
 14
 22. Defendants do not advance any reason rising to the level of necessity, to justify: (1) the absence of noise mitigation measures or other design alternatives at the southwestern terminus of the Parkway or (2) the disparity in the allocation of mitigation measures between predominantly white areas along I-75 and predominantly African-American area surrounding Cherrywood apartments.
 
 
 15
 The complaint then alleges that the above facts constitute violations of (1) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (2) U.S. Department of Transportation regulations implementing Title VI; (3) The Fair Housing Act, 42 U.S.C. § 3601; (4) The Civil Rights Act of 1870, 42 U.S.C. § 1981; (5) The Civil Rights Act of 1866, 42 U.S.C. § 1982; and (6) The Civil Rights Act of 1871, 42 U.S.C. § 1983.
 
 
 16
 In November of 1997, the defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion alleged that the complaint was barred by the applicable statute of limitations. In December of 1997, the Cherrywood residents filed their first amended complaint, alleging that they did not learn that the Parkway project would pass near their homes until construction commenced in 1996. It further states that "Defendants actions ... continue through the present time."
 
 
 17
 The district court granted the defendants' motion to dismiss the complaint in February of 1998. First, the court noted that all of the federal statutes under which the Cherrywood residents had brought their claims are subject to a two-year statute of limitations. It then concluded that the cause of action accrued in 1984, when the Parkway EIS was approved. The district court also found that the failure to erect sound barriers was not a "continuing violation" that would prevent the limitations period from lapsing. It thus concluded that all of the Cherrywood residents' claims were time-barred.
 
 
 18
 Additionally, the district court opined that even if the claims of the Cherrywood residents were not time-barred, they would not prevail on the merits. In so stating, the court specifically said that its analysis of the merits was not necessary to its ruling on the statute of limitations issue.
 
 II. ANALYSIS
 
 19
 A. The Cherrywood residents' cause of action for discrimination accrued when they knew or had reason to know of the allegedly discriminatory allocation of sound-mitigation measures
 
 1. Standard of review
 
 20
 The determination that a complaint was filed outside of the applicable statute of limitations is a conclusion of law that this court reviews de novo. See Farber v. Massillon Board of Educ., 917 F.2d 1391, 1399 (6th Cir.1990).
 
 
 21
 2. The Cherrywood residents' claims of discriminatory allocation of sound-mitigation measures arose at the time that they knew or should have known of ODOT's allegedly discriminatory conduct
 
 
 22
 In dismissing the Cherrywood residents' claims in their entirety, the district court relied upon Sierra Club v. Slater, 120 F.3d 623 (6th Cir.1997), for the proposition that "[a] cause of action arising out of an improper EIS generally accrues when the EIS is approved." Sierra Club concerned the same Parkway project that is at issue here. See id. at 623. In Sierra Club, the plaintiff challenged a decision to fill wetlands in connection with the construction of the Parkway. See id. at 629. After finding that the gravamen of the lawsuit was a claim under the Administrative Procedure Act ("APA"), this court concluded that the Sierra Club's cause of action accrued when "final agency action" occurred. See id. at 631. The Sierra Club court then found that approval of the EIS constituted "final agency action" under the APA. See id. But Sierra Club does not stand for the proposition that all claims related to projects for which an EIS is issued accrue at the time that the EIS is approved.
 
 
 23
 Implicit in the district court's dismissal of this lawsuit is its characterization of the suit as "a cause of action arising out of an improper EIS." In fact, the complaint does contain allegations that the EIS was improper. In one paragraph, for instance, the Cherrywood residents allege that ODOT incorrectly measured existing noise levels. But the complaint also states that the defendants' "discriminatory allocation of mitigation measures between Point Place and Cherrywood disproportionately imposes environmental and health burdens of freeway construction on the basis of race." At some point before 1996, ODOT (and, allegedly, the City of Toledo) made the decision to provide sound barriers along I-75 in spite of the noise analysis that recommended a decision to the contrary. At about the same time that the construction of these barriers commenced, counsel for the Cherrywood residents requested that ODOT reconsider providing such barriers on the Parkway near Cherrywood.
 
 
 24
 The essence of the claim in the present case is that ODOT made a racially based decision to utilize limited funds to provide sound barriers near a white neighborhood rather than near a black neighborhood. Although sound barriers were not recommended for either project, the complaint alleges that the noise analyses showed that the Parkway project would result in a greater increase in noise levels than would the I-75 widening. To the extent that the Cherrywood residents claim discrimination in the allocation of sound-mitigation measures, their cause of action did not accrue until they knew, or should have known, that ODOT was allocating such resources in an allegedly discriminatory manner. See Sevier v. Turner, 742 F.2d 262, 273 (6th Cir.1984) ("A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence.").
 
 
 25
 The Cherrywood residents state that they did not become aware of ODOT's plan to construct sound barriers on I-75 until they saw such barriers being built in the summer of 1996. Although the evidence in the record is insufficient to indicate whether they had constructive notice of the sound barriers before that time, it does show that the Cherrywood residents requested sound barriers for the Parkway project in 1996. Their cause of action for discriminatory allocation of sound-mitigation measures thus accrued when (a) their request for such measures was denied, and (b) they knew or should have known that sound barriers were to be constructed around the I-75 widening project.
 
 
 26
 All of the Cherrywood residents' claims are governed by a two-year statute of limitations. See Collyer v. Darling, 98 F.3d 211, 220 (6th Cir.1996) (holding that Ohio's two-year statute of limitations is generally applicable to civil rights claims brought in that state); 42 U.S.C. § 3613(a)(1)(A) (providing a two-year limitation on Fair Housing Act claims). The present state of the record shows that the Cherrywood residents' request for sound barriers was denied in 1996, and that they had no actual or constructive knowledge of the I-75 sound-barrier construction until the summer of that year. Their complaint, filed on August 26, 1997, was thus timely under the applicable statute of limitations. We therefore reverse the district court's judgment to the extent that it prevents the Cherrywood residents from proceeding forward with their claim that ODOT and the other defendants discriminated in choosing to provide sound barriers along I-75 but not along the Parkway.
 
 
 27
 3. Any claims relating to the Parkway EIS are time-barred
 
 
 28
 a. Claims arising out of the Parkway EIS accrued when it was approved
 
 
 29
 The Cherrywood residents allege that no meeting was held with them before the Parkway EIS was approved. They do not allege, however, that any attempt was made to conceal the public-meeting process from them, or that ODOT did not make reasonable efforts to put them on notice. The Cherrywood residents neither dispute ODOT's assertion that it provided general public notice about at least one of the meetings, nor allege that they could not have discovered, through reasonable diligence, the existence of the Parkway project and of its proximity to Cherrywood.
 
 
 30
 Instead, they assert that they "did not learn of Parkway construction plans through newspapers, television, fliers, or word of mouth" and that they "had no knowledge that defendants planned to construct the Parkway through their neighborhood until 1996 when construction activities commenced." These allegations are insufficient to toll the statute of limitations. Because any claims arising out of ODOT's preparation and approval of the EIS accrued in 1984, far more than two years before the complaint was filed, such claims are now time-barred.
 
 
 31
 b. The EIS itself does not create a "continuing violation"
 
 
 32
 The Cherrywood residents alternatively contend that the alleged EIS violations are not time-barred because they constitute "continuing violations." This court has adopted a three-part inquiry for determining whether a continuing violation exists. First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern (in this case, the approval of the EIS). Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiffs must have been avoidable if the defendants had at any time ceased their wrongful conduct. See Kuhnle Brothers, Inc. v. County of Geauga, 103 F.3d 516, 522 (6th Cir.1997) (holding that the deprivation of a trucking company's liberty interest in intrastate travel was a "continuing violation").
 
 
 33
 ODOT's approval of the Parkway EIS, its I-75 noise analysis, and its subsequent decision to allocate sound-mitigation resources to the I-75 project but not to the Parkway project are not all part of a "pattern" as discussed in Kuhnle Brothers. To the contrary, it is precisely because ODOT's decision to build sound barriers on I-75 had nothing to do with either the Parkway EIS or the I-75 noise analysis that the Cherrywood residents' claims of discriminatory allocation of resources accrued at a later time.
 
 
 34
 ODOT's actions with reference to the Parkway EIS do not meet the first prong of the test set forth in Kuhnle Brothers. Approval of the EIS was a discrete event. In addition, no allegations have been made that ODOT concealed information relevant to the sound-mitigation needs of the Parkway or otherwise engaged in wrongful conduct that continued after its decision to approve the EIS.
 
 
 35
 The present case also fails the second prong of the Kuhnle Brothers test because the Cherrywood residents' injury from the approval of the EIS was complete in 1984. As the Fourth Circuit noted in National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir.1991), "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." (internal quotation marks and citations omitted). In this case, to the extent that the Cherrywood residents complain of injury from ODOT's failure to recommend sound-mitigation measures in the EIS, the continuing lack of such measures constitutes a "continuing ill effect," and is not the result of continuing unlawful acts.
 
 
 36
 As to the third prong of the Kuhnle Brothers test, it too cannot be met by the Cherrywood residents because ODOT's adherence to the Parkway EIS was not a continuing course of conduct. Although construction of sound barriers would avoid further injury to the Cherrywood residents, this is true of every case where the complaint involves the failure to provide a public amenity. Passive inaction, however, does not support a continuing violation theory.
 
 
 37
 The district court noted that the continuing violation theory is rarely successful outside of the Title VII discrimination area. It then provided a thorough and well-reasoned analysis of those few federal cases that deal with the continuing effects of discrete acts such as approval of an EIS. Of the various cases relied upon by the Cherrywood residents, the only one that might arguably serve to bring ODOT's actions in the 1980s within the "continuing violation" theory is Palmer v. Board of Educ., 46 F.3d 682 (7th Cir.1995). Palmer addressed the question of whether an allegedly discriminatory school-closing plan constituted a continuing violation. In the school district at issue, there had been two junior high schools--one predominantly African-American and the other predominantly Caucasian. The district closed the predominantly African-American school and bussed the students to the other. The parents of an African-American student sued, claiming that the closing was discriminatory. In holding that the claim was not time-barred, the Seventh Circuit stated that "[i]f, as plaintiffs believe, the school board's explanation for closing Deer Creek is a pretext for discrimination, then each year's decision to leave the building shuttered is a new violation...." Id. at 686. The Seventh Circuit compared these annual decisions with the implementation of a discriminatory pay scale, which generates a wrongful act each pay period. See id.
 
 
 38
 Under the theory articulated in Palmer, ODOT's continuing adherence to the Parkway EIS arguably constitutes a series of decisions not to build sound barriers. But this case is distinguishable from Palmer in that the EIS sound-barrier decisions on the Parkway and I-75 projects have not been systematically and repeatedly revisited. Although the school board in Palmer had to make a choice between only two options--the predominantly Caucasian school and the predominantly African-American school--at the beginning of each school year, there is no indication that ODOT revisited the EIS issue at regular intervals. Thus any claims contained in the complaint that relate to the creation and adoption of the Parkway EIS are time-barred because they do not satisfy the requirements for a "continuing violation."
 
 
 39
 B. The district court has not properly ruled on the merits of the plaintiffs' claims
 
 
 40
 Even though the district court dismissed this suit on the basis that it was barred by the applicable two-year statutes of limitation, it volunteered that "[a]lthough it is not necessary to the Court's determination, the Court finds further that Plaintiffs could not prevail on the merits even if they had standing to bring their claim." The district court then stated that the Cherrywood residents would have to prove intentional discrimination in order to prevail. Although the opinion did not discuss whether the complaint states a claim upon which relief may be granted, the district court pointed out the procedural hurdles that the Cherrywood residents might face in establishing what they allege. Such an analysis is appropriate at the summary judgment stage, when the parties have had an opportunity to develop their proof through discovery, but it is not a basis for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Bloch v. Ribar, 156 F.3d 673, 686 (6th Cir.1998) (stating that although the district court might be justified in dismissing the plaintiffs' privacy claim at the summary judgment stage in the absence of additional proof, the plaintiffs were only required to create a foundation for recovery to survive a motion to dismiss under Rule 12(b)(6)).
 
 
 41
 In the present case, the Cherrywood residents have alleged the following facts in their complaint: (1) that neither the Parkway project nor the I-75 widening was initially designated by ODOT as requiring sound barriers; (2) that the Parkway project would result in a greater increase in background noise than would the I-75 widening; (3) that the residents of the area adjacent to the Parkway project are mostly African-American and overwhelmingly low-income; (4) that the residents in the area adjacent to the I-75 widening are mostly Caucasian and have higher incomes; and (5) that sound barriers are being constructed around the I-75 widening without justification. The Cherrywood residents allege that they have been injured by ODOT's actions and that such actions are the result of intentional discrimination.
 
 
 42
 As noted by the district court, "[t]he Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief." See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The question of whether the above allegations, if true, state a claim under the various civil rights statutes upon which the Cherrywood residents rely has not yet been properly brought before the district court. We therefore remand this case for its further consideration. Without passing on the merits of this issue, we can at least say that it is by no means obvious that the complaint is deficient as a matter of law.
 
 III. CONCLUSION
 
 43
 For all of the reasons stated above, we REVERSE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.