RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0497p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RONALD EIDSON,

*Plaintiff-Appellant,*

v.

No. 07-5406

STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S
SERVICES, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 05-00276—J. Ronnie Greer, District Judge.

Argued: October 23, 2007

Decided and Filed: December 20, 2007

Before: BOGGS, Chief Judge; McKEAGUE, Circuit Judge; COHN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** William E. Phillips II, PHILLIPS & HALE, Rogersville, Tennessee, for Appellant.
Juan G. Villaseñor, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for
Appellees. **ON BRIEF:** William E. Phillips II, PHILLIPS & HALE, Rogersville, Tennessee, for
Appellant. Juan G. Villaseñor, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee,
for Appellees.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. This case arises from the temporary removal of plaintiff-
appellant Ronald Eidson's minor daughters by Tennessee Child Protective Services and the
Tennessee Department of Children's Services after one of his daughters falsely accused him of
sexual abuse. Full custody was restored to plaintiff eleven months later, after his daughter recanted
her accusation. One year later, plaintiff filed suit, charging that various wrongful acts by child
protective services workers had deprived him of liberty without due process. The district court
dismissed the action as time-barred, rejecting plaintiff's arguments that the accrual of his cause of

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by
designation.

action should be deemed to have been extended due to application of the continuing violation doctrine or, alternatively, abstention principles. The district court's ruling is well-reasoned. For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In September 2003, plaintiff-appellant Ronald Eidson had been awarded custody of his three children; their mother, Nancy Eidson, was granted visitation rights. On November 17, 2003, his daughter Amanda accused her father of sexual abuse. On November 18, Child Protective Services ("CPS") responded to the accusation, sending CPS investigator Leilani Mooneyham to interview Amanda. After speaking with Amanda, in the company of Amanda's mother, Mooneyham determined that removal of both of plaintiff's daughters, Amanda and Kathryn, from his custody was appropriate.[2] Without conducting any further investigation, Mooneyham removed both daughters on November 18, 2003, pursuant to a safety plan created by CPS, and placed them with their mother. Plaintiff was to have no contact with the daughters.

Despite a Tennessee law requirement that a hearing be conducted within three days following an immediate removal of a child from a parent's custody, no such proceeding was initiated by the Tennessee Department of Children's Services ("DCS"). On May 24, 2004, DCS finally filed a petition in juvenile court alleging plaintiff's children were dependent and neglected. At the conclusion of the ensuing hearing, the juvenile court awarded temporary custody of the children to DCS, which placed them with their mother.[3]

On June 7, 2004, investigator Myra Ramey, who had been assigned to replace Mooneyham, sent plaintiff a "standard perpetrator notification letter," informing him that he was "indicated for sexual abuse" and that he had a right to appeal the decision. Plaintiff alleges this letter served as notification that his name had been added to an internal DCS sex-offender registry.

On June 22, 2004, plaintiff's daughter recanted her allegations of sexual abuse and admitted that her mother had instigated the false charge. A hearing was held on June 28, 2004, where the juvenile court was informed of the recantation. Custody of the children was removed from the mother and transferred to an aunt and uncle.

On July 22, 2004, the juvenile court returned the daughters to plaintiff for a 90-day trial period. Plaintiff alleges that during the 90-day period, he and his family were "subject to continual interference by DCS." The nature of the alleged interference is not identified in the complaint or in plaintiff's appellate briefing. On October 22, 2004, after successful completion of the trial period, the juvenile court returned full custody of the children to plaintiff. One year later, Eidson filed this action on October 24, 2005 in the Eastern District of Tennessee, claiming violations of his

---

[1]As plaintiff's complaint was dismissed under Fed. R. Civ. P. 12(b)(6), the factual record is truncated. This fact summary is gleaned largely from the allegations of plaintiff's second amended complaint which, for purposes of this review, are accepted as true.

[2]The record does not disclose the age of either daughter, although plaintiff identifies Kathryn as the younger of the two.

[3]Plaintiff alleges that Mooneyham testified falsely at the hearing in order to deny him custody of his children. Although the nature of the alleged false testimony is not spelled out, we surmise that Mooneyham testified that plaintiff consented to the initial removal of his children pursuant to the CPS safety plan, when in fact he had not.

procedural and substantive due process rights under 42 U.S.C. § 1983.**4**  Named as defendants are DCS and CPS and several of their employees.

Defendants moved to dismiss the complaint as time-barred.  On March 6, 2006, the district court granted the motion and dismissed plaintiff's claims as barred by the one-year Tennessee statute of limitations applicable to § 1983 actions.  In its memorandum opinion and order, the district court concluded that plaintiff's claims do not satisfy the requirements of the continuing violation doctrine.  The court further rejected plaintiff's attempt to invoke abstention principles to forestall dismissal.  The court thus held the claims time-barred because all unlawful acts alleged in support of the claims occurred more than one year prior to the filing of the complaint.

## II.  ANALYSIS

### A.  Standard of Review

Whether the district court properly dismissed the complaint pursuant to Rule 12(b)(6) is a question of law subject to *de novo* review.  *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).  The reviewing court must construe the complaint in a light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief.  *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005).  Yet, to survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.  *Mezibov*, 411 F.3d at 716.  Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  *Id.  See also*, *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (explaining that complaint must contain something more than a statement of facts that merely creates speculation or suspicion of a legally cognizable cause of action).

### B.  Continuing Violation

The statute of limitations applicable to a § 1983 action is the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises. *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997).  The parties agree that a one-year limitation period, borrowed from Tennessee law, Tenn. Code Ann. § 28-3-104(a)(3), applies in this case.  Plaintiff contends his cause of action did not accrue until the juvenile court proceedings concluded on October 22, 2004.  He argues that his complaint, filed on October 24, 2005, was timely filed, because the date on which the one-year period would have expired, October 22, 2005, fell on a Saturday and the first business day thereafter was October 24, 2005.

The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law.  *Kuhnle Bros.*, 103 F.3d at 520. Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action.  *Id.* at 520.  "[I]n determining when the cause of action accrues in section 1983 actions, we have looked to what event should have alerted the typical lay person to protect his or her rights."  *Id.* (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).  S*ee also*, *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003); *Hughes v. Vanderbilt University*, 215 F.3d 540, 548 (6th Cir. 2000).

---

**4**Plaintiff also alleged that defendants violated his "well established Constitutional right to make decisions concerning the care, custody, and control of his children which is guaranteed under the Due Process Clause of Amendment Fourteen of the United States Constitution."  It is unclear how this claim differs from his due process claims. As neither the district court nor the parties  analyzed this claim separately from the due process claims, it is given no particularized attention in this opinion.

The precipitating event in this action, plaintiff concedes, was defendants' initial removal of his daughters from his custody on November 18, 2003.  At the time of the initial removal, plaintiff knew of the injury which is the basis of his claims.  Yet, plaintiff argues that defendants' continuing wrongful conduct, from the date of the initial removal through the completion of the 90-day trial placement period on October 22, 2004, constituted a continuing violation, extending accrual of his cause of action.

The test for determining whether a continuing violation exists is summarized as follows:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern. . . .  Second, injury to the plaintiff must continue to accrue after that event.  Finally, further injury to the plaintiff[] must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999).  *See also*, *Paschal v. Flagstar Bank*, 295 F.3d 565, 572 (6th Cir. 2002).  "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert*, 172 F.3d at 940 (quoting *National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)).  Passive inaction does not support a continuing violation theory.  *Id.*; *Paschal*, 295 F.3d at 573.

In evaluating whether plaintiff has alleged facts sufficient to make out a continuing violation, it is necessary to first consider the contours of the civil rights claims he has asserted.  "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537 (1981)) (emphasis in *Zinermon*).  It is undisputed that parents have a fundamental liberty interest in the custody of their children and that state intervention in the relationship between a parent and child must be accomplished by procedures meeting the requisites of the Due Process Clause. *See Smith v. Williams-Ash*, 173 F. App'x 363, 366 (6th Cir. 2005).  Even a temporary deprivation of physical custody requires a hearing within a reasonable time. *Id.* Plaintiff has asserted a colorable  procedural due process claim—i.e., that he was denied a hearing within a reasonable time.

"To state a cognizable substantive due process claim, the plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir. 2007) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).  The government's interest in protecting children is just as compelling as the parents' "abstract fundamental liberty interest in family integrity." *Kottmyer v. Maas*, 436 F.3d 684, 690 (6th Cir. 2000).  Here, the juvenile court's finding of probable cause to remove plaintiff's daughters, based on Amanda's accusation of sexual abuse, is supported by a compelling interest and does not, on its face, suggest government over-reaching that "shocks the conscience."  However, to the extent plaintiff's substantive due process claim is premised on allegations that defendants denied him a hearing for some seven months after initially removing his daughters and then deliberately perpetrated a fraud on the juvenile court, he makes a colorable "shocks the conscience" claim.

With respect to both due process claims, however, the district court determined that plaintiff was aware of the complained-of wrongful conduct well over twelve months prior to the filing of his complaint and his claims were therefore time-barred.  The court rejected plaintiff's reliance on the continuing violation theory.  Although the court reviews the district court's decision *de novo*, the district court's analysis of the continuing violation issue is clear and succinct and represents a useful starting point.

The district court acknowledged, with reference to the *Tolbert* standard, that plaintiff had alleged wrongful acts by defendants that post-dated the initial removal of his daughters, i.e., the continued denial of custody without proper notice and hearing, as well as Mooneyham's perjured testimony in the May 2004 hearing. By the time the hearing was conducted, however, the district court observed, injury resulting from the alleged denial of procedural due process had ceased to accrue, as plaintiff had, by then, been afforded notice and a hearing. Further, the court properly recognized that, by the conclusion of the May 2004 hearing, the premises of plaintiff's substantive due process claims, i.e., Mooneyham's allegedly perjured testimony and the finding of probable cause to remove the daughters, were certainly known to plaintiff. The only allegation that was deemed to possibly amount to a continuing violation after the hearing was that of continued interference by defendants during the 90-day trial placement period. The district court considered the allegation too vague to make out a due process violation. Accordingly, the district court held that plaintiff's claims failed to meet the requirements of the continuing violation doctrine and that his cause of action accrued more than one year prior to the filing of his complaint.

Plaintiff's objection to this reasoning is groundless. He argues that his complaint contains allegations of three kinds of wrongful action that continued after the May 2004 hearing: (1) placement of his name on an internal sex offender registry; (2) continued prosecution of the neglect petition after Amanda recanted her accusation; and (3) continued interference during the trial placement period. He insists the injury he sustained as the result of a continuous series of events did not accrue until October 22, 2004, when legal custody of his daughters was finally restored to him. Yet, none of these allegedly continuing wrongful acts make out a deprivation of liberty without due process or otherwise suggest *unlawful* conduct; and the complaint offers no reason to conclude any of them continued *beyond* October 21, 2004. Granted, full legal custody was not restored until October 22, 2004, but actual physical custody of his daughters had been returned to plaintiff in July 2004. That is, the injury resulting from the precipitating event had been substantially remedied in July 2004—the return of plaintiff's daughters having thus avoided any continuing constitutionally cognizable injury.

Any harmful effects resulting from actions allegedly taken by defendants after the juvenile court proceeding are appropriately characterized as "continuing ill effects," which do not make out a continuing violation. The letter plaintiff received informing him that he had been indicated for sexual abuse and his name placed in an internal database was not an unlawful act, but represents a reasonable precaution, incidental to his daughter's *later*-recanted allegation of sexual abuse. Even though Amanda subsequently recanted her accusation, the earlier inclusion of plaintiff's name on the internal list, without more, hardly implicates any deprivation of liberty without due process.

Plaintiff's allegation of continued prosecution of the petition after Amanda's recantation appears to be based on the contention that defendants continued to fail to conduct the sort of thorough investigation that would have exonerated him. Further, defendants are alleged to have known of Mooneyham's false testimony regarding his consent to the children's removal and yet continued to refrain from informing the juvenile court. These allegations fail to establish a continuing violation, as mere inaction is not enough to satisfy the doctrine. *Tolbert*, 172 F.3d at 940; *Paschal*, 295 F.3d at 573.

Plaintiff has not identified any affirmative acts taken by defendants in furtherance of "continued prosecution" except for his vague allegation of "continual interference" during the trial placement period. This, too, hardly suggests unlawful conduct and, in any event, is nothing but an ill effect of the original removal of the children, since the juvenile court had awarded temporary custody to DCS in the May 2004 proceeding. Considering the seriousness of the original accusation, and Amanda's recanting thereof, DCS was certainly justified in cautiously questioning whether the truth had in fact emerged and whether the daughters' best interests were served by their return to their father's household. DCS had a legitimate reason and arguably an affirmative duty to continue

monitoring the children during the trial placement period. Plaintiff's complaint affords no support for the conclusion that the "continual interference" he complains of was anything other than ordinary inconvenience attendant to legitimate monitoring by DCS.

Even viewing the allegations in the light most favorable to plaintiff, they fail, due to their vagueness, to warrant a reasonable inference that the alleged interference rose to the level of a deprivation of liberty without due process. As the Supreme Court recently reiterated, even under Rule 12(b)(6) review, a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient. *Bell Atlantic*, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Plaintiff's complaint simply does not pass muster under this standard.

Hence, it is apparent that plaintiff has failed to set forth facts facially establishing a continuing violation during the twelve-month period immediately preceding the filing of his complaint. The district court did not err in rejecting plaintiff's continuing violation theory.

### C. Abstention Principles

Plaintiff's alternative argument for extension of the date of accrual of his cause of action is based at least derivatively on ill-fitting abstention principles. Plaintiff contends that if he had filed his § 1983 claims prior to the completion of the state juvenile court proceedings, the district court would have been obliged to abstain. It follows, plaintiff argues, citing the Sixth Circuit's ruling in *Shamaeizadeh v. Cuniga*, 182 F.3d 391 (6th Cir. 1999), that his cause of action did not accrue until the juvenile court proceedings concluded on October 22, 2004. The district court rejected this argument as well. The district court accepted the notion that a federal court would have been constrained to abstain from proceeding with plaintiff's § 1983 claims during the pendency of the juvenile court proceedings, but held this likelihood alone did not toll the running of the statute of limitations and did not relieve plaintiff of the responsibility to timely file his claims. The district court was also unpersuaded by plaintiff's reliance on *Shamaeizadeh*, holding that its deferred-accrual reasoning applied only in the context of state court criminal proceedings.

Despite plaintiff's characterization of his argument, the ruling in *Shamaeizadeh* is not based on application of abstention principles. Yet, abstention principles are not totally inapposite. Except in extraordinary circumstances federal courts should "permit state courts to try state cases free from interference by federal courts." *Younger v. Harris*, 401 U.S. 37, 43 (1971). The underlying concern of *Younger* is the "threat to our federal system posed by displacement of state courts by those of the National Government." *Moore v. Sims*, 442 U.S. 415, 423 (1979). The Sixth Circuit has held that *Younger* abstention is appropriate "when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Coles v. Granville*, 448 F.3d 853, 865 (6th Cir. 2006). "[T]he temporary removal of a child in a child-abuse context is . . . 'in aid of and closely related to criminal statutes'" and *Younger* abstention has been applied when there was a pending state court child abuse proceeding. *Moore*, 442 U.S. at 423 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)). "A district court deciding to abstain under *Younger* has the option of either dismissing the case without prejudice or holding the case in abeyance." *Coles*, 448 F.3d at 866.

These abstention principles form the backdrop for the parties' arguments regarding accrual of plaintiff's cause of action, but are only marginally related to plaintiff's argument based on *Shamaeizadeh*. *Shamaeizadeh* represents an extension of the rule established in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that Heck's post-conviction action under § 1983 for claims analogous to the tort of malicious prosecution (brought during the pendency of his state-court criminal appeal) would not accrue until a final adjudication in Heck's favor in state court, since the tort of malicious prosecution requires final adjudication in favor of the accused and

any determination by the federal court regarding the legality of the prosecution would necessarily effect the validity of the state court proceedings. *Id*. at 480-87. *Heck* does not rest on abstention principles. Rather, the court held that Heck's cause of action would not even accrue (i.e., an essential element of his claim would not be satisfied) until Heck's conviction were reversed or vacated on direct appeal or otherwise. *Id*. at 484-87.

In *Shamaeizadeh*, the Sixth Circuit extended the reasoning of *Heck* to a pre-conviction situation. Shamaeizadeh never was convicted; criminal charges against him were dismissed pre-trial. For purposes of evaluating the timeliness of his § 1983 unlawful search claim, the court held that when a § 1983 claim would imply the invalidity of an *anticipated* future conviction, the statute of limitations would not begin to run until the criminal charges were dismissed. *Shamaeizadeh*, 182 F.3d at 397-99. The *Shamaeizadeh* court, following *Heck*, did not rely on abstention principles, but on deferred-accrual reasoning. In fact, the court expressly rejected the notion that the running of the statute of limitations should be deemed to begin at the time of the wrongful action and then be deemed tolled during any period that a federal court, applying abstention principles, were to stay the § 1983 action during the pendency of the criminal proceedings. Such an approach, the court reasoned, "would misdirect the criminal defendant," distracting him from "focus[ing] on his primary mode of relief—mounting a viable defense to the charges against him—before turning to a civil claim under § 1983." *Id*. at 399.

Plaintiff here maintains that the district court erred in its failure to recognize that the juvenile court child neglect proceedings are quasi-criminal in nature. He insists that the reasoning of *Shamaeizadeh* is directly applicable and that his § 1983 cause of action did not accrue until after the juvenile court proceedings concluded. Defendants point out, however, that, even if *Shamaeizadeh* would otherwise be applicable, it has been divested of continuing vitality by the Supreme Court's recent decision in *Wallace v. Kato*, 127 S. Ct. 1091 (2007).

In *Wallace*, the court specifically held that *Heck* is not to be extended into the pre-conviction arena. *Id*. at 1098. The *Wallace* court recognized that deferred-accrual reasoning was unnecessary and inappropriate in the pre-conviction setting because the common abstention practice of staying the § 1983 action would afford adequate protection to the plaintiff. In an apt rhetorical question, the *Wallace* court expressly rejected the rationale employed in *Shamaeizadeh*, i.e., that requiring a criminal defendant to timely assert any civil claim would unfairly require him to divide his attention between criminal and civil cases: "But when has it been the law that a criminal defendant, or a potential criminal defendant, is absolved from all other responsibilities that the law would otherwise place on him?" *Id*. at 1100.

In *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007), the Sixth Circuit explicitly recognized that *Wallace* "abrogates the holding in *Shamaeizadeh*":

> This court, drawing on the reasoning in *Heck*. . . held [in *Shamaeizadeh*] that when a §1983 claim would imply the invalidity of a *future* conviction, the statute of limitations would not begin to run until the criminal charges have been dismissed. . . . In no uncertain terms, however, the Court in *Wallace* clarified that the *Heck* bar had no application in the pre-conviction context.

*Id*. at 234 (citations omitted; emphasis in original).

Still, plaintiff argues that this case is distinguishable from *Wallace*. Even as he maintains that child neglect and custody proceedings are quasi-criminal, he nevertheless insists that his § 1983 claims that he was deprived of custody of his children without due process are not analogous to Wallace's claims that he was arrested and detained without judicial process. He argues that his

claims are more analogous to the malicious-prosecution-type claims presented in *Heck*, claims which *Wallace* recognized as distinguishable. *See id*. at 1096, 1098.

Granted, *some* of plaintiff's allegations are analogous to the sort of malicious-prosecution claims addressed in *Heck*. Yet, they are not analogous in the ways that mattered most to the *Heck* court. What made Heck's malicious-prosecution-type § 1983 claims materially unique was the fact that proof of the invalidity of Heck's conviction was essential or at least integral to (1) proving his claims and (2) recovering damages for the unlawful conviction. *See Heck*, 512 U.S. at 484-87. Here, in contrast, plaintiff's claims against defendants for due process violations (based primarily on allegations of denial of a timely hearing and presentation of false testimony) could hypothetically have been pursued and established without necessarily impugning the validity of any eventual finding that he had abused his daughter. None of plaintiff's claims is dependant on a determination that he was wrongfully held to have abused his daughter. Plaintiff's claims were brought prior to a juvenile court adjudication of dependency and neglect—and indeed, no final adjudication was ever made before plaintiff's daughters were returned to his custody.[5]

Plaintiff acknowledges that the precipitating event in this action was the initial removal of his daughters from his custody on November 18, 2003, based on the misconduct of a nonparty to this action (i.e., his daughter's false accusation) and before any of the alleged misconduct by defendants occurred. Plaintiff could theoretically have prevailed on his due process claims (based on the alleged ensuing misconduct of defendants) even if Amanda had never recanted her accusation and plaintiff had ultimately been held responsible for abuse. Plaintiff's due process claims are in this respect more analogous to the false-arrest-type § 1983 claim presented in *Wallace*, the sort of action that *Heck* recognized should be allowed to proceed, in the absence of some other bar, like abstention. *Id*. at 486-87.

Moreover, irrespective of the difference between types of § 1983 claims asserted, the rule of *Heck* cannot be divorced from its post-conviction setting. This is the teaching of *Wallace*. *Wallace* simply cannot be fairly read to imply that the accrual of a § 1983 malicious-prosecution-type claim is necessarily and indefinitely delayed in a pre-conviction setting until there is some accused-favorable resolution of pending or anticipated future prosecution. The *Wallace* court even referred to the "*Heck*-required setting aside of the extant conviction" as it explained the "impracticality" of the urged "bizarre extension" of *Heck* to the pre-conviction setting. *Id*. at 1098. The court went on to observe that "[i]f a plaintiff files a false arrest[-type § 1983] claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id*. Recognizing that a § 1983 plaintiff's right to relief could be preserved in this manner, the *Wallace* court deemed it unnecessary to extend the rule of *Heck* to the pre-conviction setting.

The *Wallace* court thus took the same approach employed in this case by the district court, which held first, that the pendency of juvenile court proceedings did not delay the accrual of plaintiff Eidson's § 1983 cause of action; and second, that plaintiff was required to proceed with his claims within twelve months after they accrued and obtain an abstention-based stay pending resolution of the juvenile court proceedings or suffer dismissal for filing beyond the period of limitation. Plaintiff maintains this approach is not equitable. He observes that *Wallace* refrained from holding that the running of the statute of limitations on the § 1983 action would be equitably tolled during any abstention-based dismissal or stay of the § 1983 action. 127 S. Ct. at 1098-1100. Hence, he argues

---

[5]Even the May 2004 juvenile court "probable cause" finding was not a final adjudication of abuse or neglect, but merely a judicial validation of the initial temporary removal of the daughters from plaintiff's custody.

that *Wallace* affords no assurance that the statute of limitations would be tolled during the pendency of an abstention-based stay.

Plaintiff's protest is overstated. The *Wallace* court did not hold that the running of the limitation period *could* not be tolled; only that tolling is traditionally a matter of state law and that adoption of an "omnibus" federal tolling rule would not be appropriate. *Id.* The *Wallace* court was content to entrust the matter of tolling to abstaining district courts in the exercise of their discretion on a case-by-case basis. Yet, prerequisite to obtaining any such tolling relief, of course, is the timely filing of the § 1983 action that will prompt abstention during the pendency of related state court proceedings. Because plaintiff did not timely file his § 1983 action, he forfeited any hope of such relief. It follows that the district court did not err in refusing to recognize the *Shamaeizadeh* extension of the rule of *Heck*. Although its given reason for doing so is questionable, its decision has been subsequently vindicated by *Wallace* and *Fox*, and we are free to affirm the district court's ruling on other grounds. *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 677 (6th Cir. 2005).

Accordingly, because we conclude that the rule of *Heck* does not apply in the pre-conviction setting to delay accrual of plaintiff's due process cause of action, we concur in the district court's ruling that plaintiff's § 1983 claims are time-barred.

## III. CONCLUSION

Victimized once by his daughter's false accusation, plaintiff may have been doubly victimized by overzealous or incompetent actions of child protection services workers. Yet, in the face of a one-year limitation period, he failed to act quickly enough in seeking relief for the alleged civil rights violations. The district court did not err in rejecting plaintiff's arguments that accrual of the cause of action was delayed or extended pursuant to the continuing violation doctrine or the rule of *Heck v. Humphrey*. The district court's dismissal of plaintiff's complaint as time-barred is therefore **AFFIRMED**.