NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0210n.06

Case No. 13-6018

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
*Mar 17, 2014*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ANTHONY PANZICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| CORRECTIONS CORPORATION OF | ) | DISTRICT OF TENNESSEE |
| AMERICA, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | O P I N I O N |

BEFORE:    COLE and ROGERS, Circuit Judges; HOOD, District Judge.[*]

COLE, Circuit Judge.  Plaintiff-Appellant Anthony Panzica appeals the district court's order granting Defendants' motion for summary judgment and dismissing his 42 U.S.C. § 1983 action as untimely.  For the reasons that follow, the complaint was not time-barred.  Accordingly, we reverse the district court's order and remand the case for further proceedings.

**I. BACKGROUND**

**A. Factual Background**

In 2008, Panzica pleaded *nolo contendere* to a single count of statutory rape by an authority figure in a Tennessee state court and received a three-year sentence, which amounts to

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1,095 days. After sentencing, Panzica was incarcerated at the West Tennessee State Penitentiary and was later transferred to the Hardeman County Correctional Facility ("HCCF"), where he was detained until November 19, 2010. Panzica was granted seventy-four days of "time credits" toward his sentence for his pre-trial incarceration from September 25, 2008, through December 8, 2008. In addition, the Tennessee Department of Corrections awarded Panzica 16 days of sentence credit in 2008, 146 days in 2009, and 148 days in 2010, for a total of 310 credit days.[1] In December 2009, Panzica reviewed his sentence-credit records and informed an HCCF employee that he was "NOT receiving the correct amount of good day credits" that he had earned. After issuing requests for information, Panzica had "numerous conversations" with his HCCF caseworker about the incorrect calculation of his credits. Although HCCF officials completed the requests, according to Panzica, "none of the HCCF employees ever took any affirmative steps or actions to correct the matter."

## B. Procedural Background

On November 18, 2011, Panzica filed suit in federal district court for false imprisonment and negligence under 42 U.S.C. § 1983, alleging that he was detained "forty-two days past his lawful and correct release date," in violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. Seeking damages and attorney's fees, Panzica named multiple defendants in the complaint, including the Corrections Corporation of America ("CCA"), the Hardeman County Correctional Facility ("HCCF"), the Hardeman County Correctional Facility Corporation ("HCCFC"), former HCCF Warden Joe Easterling, and various John and Jane Does.

---

[1] Under Tennessee law, "[e]ach inmate who exhibits good institutional behavior or who exhibits satisfactory performance within a [work or educational] program may be awarded time credits toward the sentence imposed, varying between one (1) day and sixteen (16) days for each month served, with not more than eight (8) days for each month served for good institutional behavior and not more than eight (8) days for each month served for satisfactory program performance in accordance with the criteria established by the department [of corrections]." Tenn. Code § 41-21-236(2)(A).

Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and in the alternative, for summary judgment under Rule 56. The district court granted summary judgment and dismissed the complaint as time-barred under Tennessee Code § 28-3-104, which provides a one-year statute of limitations for false imprisonment actions. According to the district court, Panzica first realized he was not receiving the correct number of sentence credits in December 2009, but filed suit in November 2011, outside the limitations period. Panzica argues the statute of limitations began to run on the date he was released from prison—November 19, 2010—rather than the date he knew or should have known of his injury in 2009.

Panzica filed a timely notice of appeal on August 1, 2013. Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that Panzica's complaint was not time-barred.

## II. ANALYSIS

### A. Section 1983 Statute of Limitations

#### 1. Standard of Review

We review a district court's grant of summary judgment de novo. *See Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 388 (6th Cir. 2013). Summary judgment is appropriate "when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* at 387 (citation and internal quotation marks omitted). "In reviewing the record, we view the factual evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). Where, as here, Defendants have moved for summary judgment on statute-of-limitations grounds, summary judgment is appropriate if the limitations period has expired, and there is no issue of material fact as to when the plaintiff's cause of action accrued. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).

2. *Section 1983 Accrual Date*

The statute of limitations applicable to a § 1983 action is determined by state law. *See Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Here, the parties agree that Tennessee's one-year period applies. *See* Tenn. Code § 28-3-104. The source of disagreement is when Panzica's false imprisonment claim *accrued*, and to answer this inquiry, we must look to federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Generally, a claim accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.,* 522 U.S. 192, 201 (1997)). Consistent with this general rule, we have held that the statute of limitations ordinarily begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). In applying this standard, we consider the "event that should have alerted the typical lay person to protect his or her rights." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003).

The Supreme Court has recognized, however, that the accrual date for a false imprisonment claim is subject to a "distinctive rule," because a "victim may not be able to sue while he is imprisoned." *Wallace*, 549 U.S. at 389. Acknowledging this, in *Wallace*, the Court held that the statute of limitations "begin[s] to run against an action for false imprisonment when the alleged false imprisonment ends." *Id.* (quoting 2 H. Wood, Limitation of Actions § 187d(4), p. 878 (rev. 4th ed. 1916); *see also* 4 Restatement (Second) of Torts § 899 (1979) ("For false imprisonment, the statute begins to run only when the imprisonment ends, since the period of imprisonment is treated as a unit."). Thus, the "distinctive rule" from *Wallace* supports

Panzica's argument that the statute of limitations did not begin to run until he was released from prison.

In *Wallace*, the plaintiff was arrested without a warrant for first-degree murder. *Wallace*, 549 U.S. at 386. After a lengthy interrogation, Wallace "agreed to confess" to the murder and signed an incriminating statement. *Id*. He later appeared before a magistrate judge and was bound over for trial. *Id*. at 391. Before trial, he unsuccessfully attempted to suppress his confession, arguing that it was obtained as a result of an unlawful arrest. *Id*. at 386. Post-conviction, Wallace appealed, again arguing that he was arrested without probable cause, in violation of his Fourth Amendment rights. *Id.* The Appellate Court of Illinois agreed and concluded that Wallace's presence at the police station before he was formally arrested constituted an illegal seizure of his person. *Id*. at 386–87. The case was remanded for a new trial, but prosecutors dropped the charges in April 2002. *Id*. at 387.

A year later, Wallace filed a § 1983 action against the city of Chicago and several police officers, seeking damages as a result of his unlawful arrest and subsequent incarceration. *Id*. The parties disagreed as to the relevant accrual date for Wallace's claim. To resolve this debate, the Court began by identifying the general principle that a § 1983 claim accrues when a plaintiff has a complete and present cause of action. *Id*. at 388. But for false imprisonment actions (including the sub-species of false arrest), the Court explained that the limitations period begins to run only when the alleged false imprisonment ends. *Id*. Thus, to determine the accrual date, the *Wallace* Court was required, as we are required today, to determine "when petitioner's false imprisonment came to an end." *Id.* at 389.

To be sure, there are factual differences between *Wallace* and the present case, the most important of which is that the plaintiff in *Wallace* was unlawfully imprisoned *before* legal

process was initiated against him. Accordingly, the Court drew a distinction between his period of imprisonment and the related constitutional torts that could support claims for damages. The damages from Wallace's false arrest claim (which the Court couched as a false imprisonment claim) spanned only from the time of his warrantless arrest to the time he became held pursuant to legal process—that is—when "he [was] bound over by a magistrate [and] arraigned on charges." *Id.* at 389. Wallace's false imprisonment came to an end on that date, *id*, thereby beginning to run the statute of limitations for such a claim. *Id.* In contrast, the Court concluded that Wallace could recover damages stemming from his period of imprisonment *following* the commencement of legal process only under a theory of malicious prosecution. *Id.* at 390. Based on this distinction between the periods of his incarceration, the Court rejected Wallace's contention that his false imprisonment claim accrued when he was ultimately released from prison. *Id.* at 391. The Court instead held that Wallace's false imprisonment claim accrued "much earlier" under the unique facts of his case. *Id.* at 390.

*Wallace* merely distinguished claims of false arrest and malicious prosecution, clarifying in the process the accrual dates for each. *See Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007) ("*Wallace* clarifies the distinction between claims of malicious prosecution, such as the one addressed in *Heck*, and claims of false arrest and false imprisonment."). *Wallace* does not, as Defendants suggest, undermine the "distinctive rule" that false imprisonment claims begin to accrue when the false imprisonment ends. By chance, because of the distinction between claims of false arrest and malicious prosecution, Wallace's false imprisonment ended much earlier than his ultimate release from prison. *Wallace,* 549 U.S. at 390–91.

Unlike the plaintiff in *Wallace*, Panzica was lawfully detained and held initially pursuant to legal process; his arrest was proper and he pleaded *nolo contendere* to the charges against him.

Panzica does not challenge these facts. Instead, he argues that his detention turned from lawful to unlawful because he was incarcerated beyond his correct release date, which he identifies as "early October 2010." Thus, unlike in *Wallace*, there can be no claim of malicious prosecution, and there is no distinction between Panzica's periods of imprisonment. The damages stemming from Panzica's false imprisonment, if proven, would span from the date he should have been released from prison until the date he was actually released. Accordingly, the "distinctive rule" announced in *Wallace* applies, and the statute of limitations on Panzica's claim began to run "when the alleged false imprisonment end[ed]." *Id.* at 389.

Accepting the truth of Panzica's allegations, as we must for purposes of summary judgment, his period of false imprisonment spanned forty-two days—beginning sometime in early October 2010, and ending when he was released on November 19, 2010. That Panzica first realized his sentence credits were being miscalculated as early as December 2009, is of no moment. We conclude, consistent with *Wallace*, that the statute of limitations began to run on November 19, 2010, the day his false imprisonment ended. His complaint, filed on November 18, 2011, was therefore timely filed and the district court's determination to the contrary was in error.

## III. CONCLUSION

We reverse the district court's order and remand the case for further proceedings consistent with this opinion.