**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0361n.06

No. 15-3906

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jun 30, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| CHAVONNE PRINTUP, | ) | |
| | ) | |
| **Plaintiff – Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| DIRECTOR, OHIO DEPARTMENT OF JOB | ) | |
| AND FAMILY SERVICES, | ) | |
| | ) | **OPINION** |
| **Defendant,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BUTLER COUNTY, OHIO, | ) | |
| | ) | |
| **Defendant – Appellee.** | ) | |
| | ) | |

Before:  MOORE, GIBBONS, and DAVIS,[*] Circuit Judges.

**ANDRE M. DAVIS, Senior Circuit Judge.**  On February 10, 2015, Plaintiff-Appellant

Chavonne Printup brought a 42 U.S.C. § 1983 action in federal district court against Butler

County, Ohio.  She alleged that the County had violated her procedural and substantive due

process rights in failing to train two social workers, who designated her as a child abuser, and an

administrative hearing officer, who affirmed that designation.  The district court dismissed

Printup's complaint with prejudice as barred by the two-year statute of limitations.  Printup

timely appealed the district court's judgment.  For the reasons set forth below, we **AFFIRM**.

---

[*]The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the
Fourth Circuit, sitting by designation.

## I. FACTS AND PROCEDURAL HISTORY

In 2012, Printup worked as a teacher or staff member at St. Aloysius, an alternative school for children with substantial behavioral problems. R. 1 (Compl. 2) (Page ID #2). On December 13, 2012, a St. Aloysius student named C.M. violated school rules. *Id.* The next day, when Printup attempted to impose a lunch restriction on C.M. as punishment for his rule violation, C.M. ran from the building and into the street, where he was nearly hit by a vehicle. *Id.* When C.M. came back inside, he threw chairs, knocked over desks, attempted to punch Printup, and repeatedly cursed and used racial slurs. *Id.*

In response, Printup and another staff member attempted to restrain C.M. using a "small-child restraint." *Id.* To effectuate this restraint, the two staff members placed C.M. on the floor, and Printup held his upper body while the other staff member held his legs. *Id.* This effort proved unsuccessful, as C.M. continued to resist and managed to bite Printup on her forearm. *Id.* Printup then called for additional assistance, and a third staff member arrived and helped the other two execute a "supine restraint." *Id.* The staff members placed C.M. on the floor, and Printup held one of C.M.'s arms while another staff member held his other arm and the third staff member held his legs. *Id.* C.M. continued to resist while in this restraint. *Id.* At one point, C.M. stated that he was in pain, so the staff member holding his legs readjusted her position, apparently resolving the issue. *Id.* Eventually, the supine restraint proved successful, and C.M. calmed down. *Id.*

After the staff members released C.M. from the restraint, C.M. complained that his shoulder hurt but stated that he did not want to see a nurse. *Id.* Printup nonetheless arranged for a nurse to examine him. *Id.* The nurse's report did not indicate that C.M. had suffered any physical injury from the restraints, but it did mention Printup's bite wound. *Id.* Accordingly, C.M. returned to class and completed the school day. *Id.* When C.M. went home, however, he discovered that he had some bruises and scratches that Printup concedes may have resulted from the staff members' restraints. *Id.* at 3 (Page ID #3). C.M.'s grandmother contacted the Hamilton Police Department, and the Butler County Children's Services Board ("BCCSB") began an investigation targeting Printup. *Id.*

The police declined to file criminal charges, but BCCSB social workers Vanessa Long and Cynthia Klein placed Printup on Ohio's Central Registry on Child Abuse and Neglect as an "indicated" child abuse perpetrator. *Id.* Because St. Aloysius maintains a policy requiring the termination of any staff member indicated of committing child abuse, the school terminated Printup's employment. *Id.* Neither of the other staff members involved in restraining C.M. were investigated, placed on the Central Registry, or fired as a result of the incident. *Id.*

Printup challenged her child-abuser designation and received an administrative hearing. *Id.* BCCSB's ombudsman, William Morrison, presided as the hearing officer. *Id.* On February 11, 2013, Morrison issued a decision upholding Printup's child-abuser designation. *Id.* Printup avers that this decision failed to cite any applicable legal standard, failed to explain why she was investigated while the other staff members were not, failed to consider whether Printup's actions were justified by C.M.'s behavior, and included general assertions that restraints were dangerous

3

and that St. Aloysius used them too frequently. *Id.* Under St. Aloysius's policies, had the hearing officer found that Printup's designation as a child abuser was unsubstantiated, the school would have reinstated Printup as a staff member. *Id.*

On January 18, 2014,[1] Printup appealed the unfavorable administrative decision to the state court. *Id.* On January 27, 2014, the state court reversed the administrative decision, holding that the hearing officer's failure to cite the relevant legal standard resulted in an arbitrary decision, that Ohio law authorized child-restraint holds, that there was insufficient evidence that Printup had caused C.M. physical harm, and that Printup was justified in using restraints given C.M.'s behavior. *Id.* at 3–4 (Page ID #3–4). At this point, however, St. Aloysius did not reinstate Printup to her former job because it had already filled the position. *Id.* at 4 (Page ID #4). The BCCSB did not appeal the state court's decision. *Id.*

On February 10, 2015, Printup filed a complaint in federal district court pursuant to 42 U.S.C. § 1983 against Butler County, Ohio, for violations of her procedural and substantive due process rights.[2] *Id.* In particular, Printup alleged that Butler County failed to train and supervise its social workers "regarding the standard for child abuse[] and the standard for the use of physical restraints." *Id.* She also alleged that the County failed to train and supervise its hearing

---

[1] The complaint states that Printup appealed the hearing officer's decision on January 18, 2013, but this appears to be an error. *See* R. 1 (Compl. 3) (Page ID #3).

[2] Printup also initially brought claims for declaratory and injunctive relief against Cynthia Dungey in her official capacity as Director of the Ohio Department of Jobs and Family Services, as Printup sought to expunge her name from the Central Registry. R. 1 (Compl. 1, 5) (Page ID #1, 5). Dungey indicated in a motion to dismiss, however, that the Department had already removed Printup from the Central Registry before Printup filed suit. R. 13 (Dungey's Mot. to Dismiss 2) (Page ID #28). Consequently, Printup conceded that her claims against Dungey were moot, and the district court dismissed these claims in May 2015. R. 21 (Pl.'s Mem. Resp. Dungey's Mot. to Dismiss 2) (Page ID #59); R. 23 (May 11, 2015 Order) (Page ID #63).

officer "regarding the standard for child abuse, the standard for the use of physical restraints, on causation, the requirement for applying law to fact, and the prohibition against making public policy in the context of child-abuse hearings." *Id.* She contended that the County's "policy and custom" of failing to train these two sets of employees "deprived Printup of her liberty and property by designating her a child abuser on the Central Registry, where that designation was unsupported by any rational basis." *Id.* She also alleged that the County's failure to train its social workers deprived her of her substantive due process rights "because designating her as a child abuser shocks the conscience in the instant circumstances." *Id.* at 5 (Page ID #5). She sought compensatory damages, costs, and declaratory and injunctive relief.

In response, Butler County filed a motion to dismiss or, in the alternative, for judgment on the pleadings. R. 24 (Butler Cty.'s Mot. to Dismiss 1) (Page ID #64). The County argued that it was improperly named as a defendant, that Printup's claims were barred by the two-year statute of limitations applicable to § 1983 claims arising in Ohio, and that Printup failed to plead her claims with sufficient specificity. *Id.*

On August 10, 2015, the district court granted Butler County's motion to dismiss with prejudice. R. 32 (Aug. 10, 2015 Order 10) (Page ID #100). It determined that Printup's claims were barred by the two-year statute of limitations, which had begun to run when BCCSB agents deemed Printup a child abuser and when Printup lost her employment—not, as Printup had contended, when the hearing officer issued his decision affirming her child-abuser designation. *Id.* at 7–9 (Page ID #97–99). The court declined to resolve whether Butler County was a proper

party to the suit or whether the pleadings were adequate. *See id.* at 6–7 (Page ID #96–97). Printup timely filed this appeal. R. 33 (Notice of Appeal 1) (Page ID #101).

## II. ANALYSIS

### A. Statute of Limitations

The primary issue on appeal is whether the federal district court erred in dismissing Printup's February 10, 2015 complaint as barred by the two-year statute of limitations based on its determination that Printup's causes of action accrued prior to the hearing officer's February 11, 2013 decision.

We review de novo a district court's decision that a complaint was filed outside the applicable statute of limitations. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). The limitations period for a § 1983 action is the same as for personal injury actions in the state in which the § 1983 claim arises. *Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985). Thus, "the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev.[ ]Code Ann. § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual." *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc); *accord Banks*, 344 F.3d at 553 (collecting cases reaffirming this holding). Neither party disputes that the applicable limitations period for Printup's claims, which arose in Ohio, is two years. The parties disagree only as to when Printup's two-year statute of limitations began to run.

Although we borrow the statute of limitations for a § 1983 action from state law, we look to federal law to determine when a cause of action accrues and thus when the statutory period

begins. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Ordinarily, the limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). Under this discovery rule, we "look[] to what event should have alerted the typical lay person to protect his or her rights." *Id.* (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

Accordingly, to determine when Printup's causes of action accrued, we must first identify what injuries formed the basis of her constitutional claims—that is, what injuries should have made Printup aware that her rights had been violated and therefore started the clock on her statute of limitations. Printup's appeal rests primarily on the contention that her causes of action accrued when the administrative hearing officer issued his February 11, 2013 decision such that her February 10, 2015 complaint was filed within the relevant statutory period. *See* Appellant's Br. 10. She argues that the hearing officer's decision presented the "first opportunity to know or suspect that Butler County caused [her] constitutional injury." *Id.* Nevertheless, Printup also appears to acknowledge, as Butler County asserts, that her injury arose, at least in part, from her designation as a child abuser, her placement on Ohio's Central Registry, and her attendant loss of employment at St. Aloysius—events that all occurred prior to the hearing officer's decision and more than two years before Printup filed her complaint.[3] We consider the accrual date of each of Printup's claims in turn.

---

[3] Printup's complaint does not identify precisely when she was first designated as a child abuser or when she lost her job, but it goes without saying that these incidents occurred before the hearing officer's February 11,

### 1. Procedural Due Process Claim

Although Printup describes her first cause of action differently in various filings, she generally maintains that it is a "stigma-plus" procedural due process claim. *See* Appellant's Br. 7. "'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' [e.g., the loss of government employment] or property right (the plus), without adequate process." *Segal v. City of New York*, 459 F.3d 207, 209 n.1 (2d Cir. 2006) (alteration in original) (emphasis omitted) (quoting *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003)); *see also Paul v. Davis*, 424 U.S. 693, 694–95, 712 (1976) (holding that plaintiff failed to bring a colorable § 1983 claim against police officers who had distributed flyers identifying him as an "active shoplifter" where plaintiff had suffered reputational harm (stigma) from the officers' actions but had not suffered a corresponding loss of a liberty or property interest (plus)).

Printup asserted before the district court that she "suffered a liberty deprivation when she was unlawfully listed as a child abuser on the State Child Abuse Registry for approximately a year, *plus* losing her employment at St. Aloysius and other privileges under Ohio law due to the listing." R. 28 (Pl.'s Mem. Resp. Butler Cty.'s Mot. to Dismiss 3) (Page ID #79). Although these statements seem to indicate that Printup's alleged injury occurred *prior to* the hearing officer's decision, when the social workers first listed Printup on the Central Registry (producing

---

2013 decision, for that decision was prompted by Printup's attempt to challenge both her child-abuser designation and her corresponding termination.

stigma), causing her termination (the plus),[4] Printup argues that, "[f]or stigma-plus claims, the constitutional tort is not complete until the plus—i.e., a tangible burden—is imposed," and she reasons that she could have regained her job if the hearing officer had reversed her designation. *See id.* In other words, she suggests that the hearing officer's February 11, 2013 decision, which affirmed her child-abuser designation and therefore effectively cemented her loss of employment, completed her constitutional injury. *See id.*

She took this argument one step further in her appellate reply brief, asserting that a "stigma-plus" claim requires a showing of "stigma-plus *followed by inadequate procedural due process*" and contending that her injury did not occur when she was merely placed on the Central Registry (the stigma) and fired from her job (the plus) but instead occurred when the hearing officer's decision subsequently deprived her of procedural due process. *See* Appellant's Reply Br. 4. These arguments are unpersuasive.

To be sure, a § 1983 claim for deprivation of procedural due process must include more than simply an allegation that the plaintiff was stigmatized and deprived of liberty or property, as the plaintiff must in fact allege that she was injured in this manner without due process of law. *See Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the

---

[4] Likewise, Printup's complaint avers that "Defendant Butler County, through its policy and custom of failing to train its hearing officer [and social workers], deprived Printup of her liberty and property *by designating her a child abuser on the Central Registry*, where that designation was unsupported by any rational basis," R. 1 (Compl. 4–5) (Page ID #4–5) (emphasis added), referring only to an injury that occurred prior to the hearing officer's decision.

deprivation of such an interest *without due process of law*." (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990))). Moreover, it is true that this Court has produced a series of decisions indicating that "there is no viable, free standing, federal due process claim arising from injury to one's reputation. Such a claim is viable only in combination with two other elements: 'when there is some injury to employment . . . in addition to damage to reputation and a subsequent denial of procedural due process to redress that injury.'" *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 586 (6th Cir. 2004) (omission in original) (citations omitted)); *see also id.* at 588 ("The plaintiff must prove the inadequacy of state remedies as an element of her constitutional tort."); *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983) ("In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong."). These cases relied on the Supreme Court's reasoning in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986), in which the Court held that a plaintiff had failed to allege a violation of the Due Process Clause where the plaintiff's deprivation of property under color of state law had not resulted from an established state procedure. *Id.* at 543.

Nevertheless, under the circumstances of this case, the deprivation of due process need not, as Printup suggests, have occurred *after* the deprivation of a liberty or property interest in order to form an actionable injury. This Court has since clarified that the *Parratt–Vicory–Jefferson* line of cases "applies only to random, unauthorized deprivations of property" as "distinct from a deprivation resulting from an established state procedure." *Mitchell v. Fankhauser*, 375 F.3d 477, 481, 483–84 (6th Cir. 2004). Thus, where a plaintiff does not

contend that she was "deprived of [her] property interest in [her] job pursuant to a random or unauthorized act" and where she instead challenges "established state procedures," the plaintiff is "required *neither to plead nor prove the inadequacy of post-termination state-law remedies* in order to prevail." *See id.* at 482, 484 (emphasis added) (quoting *Moore v. Bd. of Educ. of Johnson City Schs.*, 134 F.3d 781, 785 (6th Cir. 1998)).

Because Printup argues that Butler County deprived her of her procedural due process rights "through its policy and custom of failing to train its hearing officer [and social workers]," R. 1 (Compl. 4–5) (Page ID #4–5), as is required to establish municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), she has necessarily challenged established state procedures and not a random or unauthorized act. She was therefore not required to plead the inadequacy of subsequent state law remedies to bring a cognizable § 1983 claim for stigma-plus.[5] Accordingly, Printup's constitutional injury occurred when she lost her job as a result of her designation as a child abuser and her placement on Ohio's Central Registry without due process of law—no *subsequent* deprivation of due process was required to give rise to her claim.

Having identified the injury underlying Printup's procedural due process claim, we apply the discovery rule to determine whether Printup's cause of action in fact accrued at the time of that injury, starting the clock on her statute of limitations. Printup knew or had reason to know

---

[5] A plaintiff is also not required to exhaust state administrative remedies as a prerequisite to filing a nonprisoner § 1983 action. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982). Moreover, as the district court noted, Printup does not contend that the statute of limitations was tolled while she pursued her state administrative remedies. R. 32 (Aug. 10, 2015 Order 9 n.2) (Page ID #99) (citing *Bd. of Regents v. Tomanio*, 446 U.S. 478, 490–91 (1980)); *see also* Appellant's Reply Br. 6 n.1 ("Printup does not argue, and has never argued, that her claims tolled until she exhausted her administrative or judicial remedies."). Instead, she asserts simply that her cause of action did not accrue until after the administrative hearing officer's decision, an argument that fails in light of *Mitchell*. *See* 375 F.3d at 481, 483–84.

of her alleged deprivation of procedural due process when she was terminated from St. Aloysius as a result of her child-abuser designation, for this event would have alerted a typical layperson to protect her rights. *See Kuhnle Bros.*, 103 F.3d at 520. Indeed, Printup was aware of the injury caused by her designation and her corresponding termination, as these incidents prompted her to seek an administrative hearing to challenge her designation. Thus, Printup's cause of action accrued and the statutory period began to run when she lost her job based on her designation by BCCSB social workers as a child abuser without due process of law, not when the hearing officer issued his decision upholding that designation. *Cf. Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010) ("Consequently, Plaintiffs' claims accrued on August 31, 2005, when they knew that CB had been expelled from Oakstone . . . . It is irrelevant that Plaintiffs also had an administrative remedy available to them at that point[;] . . . redress was available at the time of the injury."). We therefore affirm the district court's dismissal of this claim as barred by the statute of limitations.

## 2. Substantive Due Process Claim

Printup's other claim is for deprivation of her substantive due process rights. This claim largely overlaps with Printup's procedural due process claim,[6] but Printup does present one allegation that expressly pertains to her substantive due process claim—namely, that "Defendant Butler County, through its policy and custom of failing to train its social workers, deprived Printup of her substantive due-process rights because designating her as a child abuser shocks the conscience in the instant circumstances." R. 1 (Compl. 5) (Page ID #5). She also makes another

---

[6] In fact, the district court noted that, "although [Printup] technically asserts two causes of action, they essentially constitute the same claim." R. 32 (Aug. 10, 2015 Order 7) (Page ID #97).

allegation that could pertain to her substantive due process rights: "Defendant Butler County, through its policy and custom of failing to train its hearing officer, deprived Printup of her liberty and property by designating her a child abuser on the Central Registry, where that designation was unsupported by any rational basis." *Id.* at 4 (Page ID #4). This allegation may be relevant to her substantive due process claim because, "[t]o state a cognizable substantive due process claim, [a] plaintiff must allege 'conduct intended to injure in some way unjustifiable by any government interest' and that is 'conscience-shocking' in nature." *Eidson*, 510 F.3d at 635–36 (quoting *Mitchell v. McNeil*, 487 F.3d 374, 377 (6th Cir. 2007)).

By their own terms, both of these allegations suggest that Printup's initial designation as a child abuser, not the hearing officer's subsequent decision, was in fact what "shocked the conscience" and lacked any rational government interest, depriving Printup of substantive due process. Although the latter allegation mentions the hearing officer, it complains specifically of Printup's designation as a child abuser on the Central Registry, not the affirmance of her designation. Thus, even if Printup's constitutional claims did arise from the hearing officer's decision itself and not from earlier events—or even if additional causes of action, separate from those related to Printup's initial designation and termination, arose from the hearing officer's decision—Printup failed to plausibly allege such claims in her complaint.[7] *See* R. 1 (Compl. 1–

---

[7] Further, even if Printup did allege such claims, it is not clear that she would have standing to challenge the administrative decision, as the state court has since reversed the hearing officer's decision and expunged Printup's name from the Central Registry. Accordingly, any claim regarding the hearing officer's decision would likely implicate redressability and mootness concerns. Finally, with regard to Printup's counsel's assertion at oral argument and in a subsequent filing that state court review of an administrative decision is typically unavailable, *see* Apr. 21, 2016 Supp. Auth., ECF 37, this point, if true, is of no moment in this case, as Printup received such review of the administrative hearing officer's decision, whether or not she was entitled to it.

5) (Page ID #1–5). Accordingly, Printup's substantive due process claims, like her procedural due process claims, were barred by the statute of limitations.

### 3. Continuing Violation Doctrine

Printup's argument that the "continuing violation" doctrine delayed the accrual of her causes of action until the hearing officer issued his decision is unavailing. *See* Appellant's Br. 14–15. Printup suggests that Butler County's "failure to train and supervise was an on-going [sic] Butler County policy which gave rise to Printup's cumulative reputational injury. . . . Under continuing-violation accrual, [the hearing officer's] decision connected with Butler County's failure to train and supervise the social workers to form a single and actionable unit that encompassed the entirety of Printup's ordeal." *Id.* at 15. To support her assertion, Printup cites only one case—a Second Circuit decision involving a prisoner's Eighth Amendment claim of deliberate indifference to serious medical needs. *Id.* at 14 (citing *Shomo v. City of New York*, 579 F.3d 176, 179 (2d Cir. 2009)).

At the outset, we note that Printup failed to make this argument before the district court. Although she did oppose Butler County's motion to dismiss on statute of limitations grounds, Printup did not suggest that a continuing violation had occurred; instead, she argued only that she had been unable to discover her constitutional injury until after the hearing officer's decision. *See* R. 28 (Pl.'s Mem. Resp. Butler Cty.'s Mot. to Dismiss 4) (Page ID #80). Accordingly, Printup has waived her argument regarding the continuing violation doctrine. *See Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir. 1993) ("[A]n issue not raised before the district court is not

properly before us."). In any event, Printup has failed to demonstrate the applicability of this doctrine.

The continuing violation doctrine applies where "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (quoting *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009)). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (quoting *Eidson*, 510 F.3d at 635). Thus, "[p]assive inaction does not support a continuing violation theory." *Eidson*, 510 F.3d at 635.

As for the first prong of the test, Printup's argument that the social workers' designation of her as a child abuser and the hearing officer's subsequent affirmance of that decision constituted "continuing wrongful conduct" for purposes of the continuing violation doctrine is tenuous at best. Although Printup asserts in her appellate briefs that the two decisions resulted from a common Butler County policy or custom not to train its social workers or administrative hearing officer, *see* Appellant's Br. 15, Printup has not shown how such a broad policy would render the separate decisions part of one continuing string of wrongful conduct.

Likewise, Printup's continued appearance on the Central Registry and lack of employment at St. Aloysius were continual ill effects of her initial designation as a child abuser; they were not occasioned by continual unlawful acts. That is, while the hearing officer's decision did not reverse the ill effects that Printup had been suffering since her designation, it also did not affirmatively cause Printup to suffer further harm. *See Eidson*, 510 F.3d at 635

("Passive inaction does not support a continuing violation theory."); *cf. Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 308–09 (6th Cir. 2010) (rejecting plaintiff-appellant's assertion that the continuing violation doctrine applied "each day that her children were out of her custody and that the [continuing] violation did not end until they were returned to her home"). Although a decision by the hearing officer in Printup's favor might have allowed Printup to avoid the continued ill effects of her previous injury, this does not mean that the hearing officer's decision affirming her prior designation—or, more precisely, that the County's failure to train the hearing officer, resulting in this decision—constituted wrongful action that in fact caused further injuries.[8]

We are unable to locate any case with circumstances resembling this one in which this Court (or any court) applied the continuing violation doctrine, and Printup has failed to direct us to such a case. Accordingly, we conclude that the continuing violation doctrine did not delay the accrual of Printup's causes of action.

### 4. *Heck v. Humphrey*

Printup argues in the alternative that the principles underlying *Heck v. Humphrey*, 512 U.S. 477 (1994), operated in this case such that her causes of action did not commence until January 27, 2014, when the state court ultimately reversed the hearing officer's administrative decision. Appellant's Br. 12–13. In *Heck*, which essentially concerned a claim for malicious

---

[8] This Court has also distinguished "continuing violations, which toll the applicable statutes of limitations, from repetitive discrete violations, which constitute independently actionable individual causes of action." *Nat'l Parks Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 480 F.3d 410, 417 (6th Cir. 2007). In this case, the hearing officer's administrative decision might have given rise to a discrete violation that constituted an independently actionable cause of action. Printup has not made this argument, however, as she instead attempts to elide the social workers' designation with the hearing officer's subsequent decision affirming that designation.

prosecution, the Supreme Court held that a "§ 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. at 489–90. Printup argues that the same reasoning should apply here, as "[b]oth *Monell* claims were dependent upon the state court's reversal of [her child-abuser] designation: she lacked any reputational injury until the state court acted to clear her; and she lacked a due-process arbitrariness claim until the state court found that the hearing officer disregarded Ohio law and applied his own law." Appellant's Br. 13.

As with the continuing violation doctrine argument, Printup failed to make this argument before the district court. In fact, she specifically argued before the district court that her causes of action accrued when the hearing officer issued his decision, not when the state court later reversed that decision. *See* R. 28 (Pl.'s Mem. Resp. Butler Cty. Mot. to Dismiss 4) (Page ID #80) ("[T]he constitutional tort was not complete until the hearing officer affirmed the child-abuse designation on 11 February 2013 in his written decision."). Thus, Printup has waived this argument. *Cf. Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009) (holding that plaintiff-appellant waived his argument that his claim accrued on a particular date when he had argued before the district court that it accrued on a different date). Even if this argument were not waived, however, Printup's reliance on *Heck* would be unavailing.

Printup's assertion that "she lacked any reputational injury until the state court acted to clear her" is unpersuasive, as Printup surely suffered reputational injury from her initial listing on the Central Registry; no subsequent state court decision reversing her designation as a child abuser was necessary to establish a reputational injury. While her other assertion—that her

17

substantive due process cause of action pertaining to the hearing officer's "arbitrary" decision arose when the state court in fact declared the decision arbitrary—may have some logical appeal, the Supreme Court has foreclosed application of *Heck* in circumstances that do not involve an extant criminal conviction. *See Wallace*, 549 U.S. at 393 ("[T]he *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has *not* been . . . invalidated, that is to say, an outstanding criminal judgment. It delays what would otherwise be the accrual date of a tort action until the setting aside *of an extant conviction*." (omission in original) (internal quotation marks omitted)). Thus, *Heck* is inapposite, as Printup was not criminally convicted of anything.

Although Printup argues that *Heck*'s "reasoning has been extended to cases arising from quasi-criminal, administrative litigation," citing only a Second Circuit case involving prison discipline that preceded *Wallace*, *see* Appellant's Br. 12–13 (citing *Black v. Coughlin*, 76 F.3d 72 (2d Cir. 1996)), this Court has rejected attempts since *Wallace* to extend *Heck* to proceedings that are "quasi-criminal in nature," such as "juvenile court child neglect proceedings," *see, e.g.*, *Eidson*, 510 F.3d at 639. Accordingly, we affirm the district court's dismissal of Printup's complaint as barred by the statute of limitations, and we need not consider the other grounds for affirmance that Butler County urges.

## B. Dismissal with Prejudice

Finally, the district court did not abuse its discretion in dismissing the complaint with prejudice where Printup's claims were barred by the statute of limitations such that any amendment would have been futile and where Printup had not sought to amend her complaint in

any event.  *See Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990) ("The decision to dismiss with prejudice . . . lies within the discretionary power of the district court, and we will not reverse absent a clear showing of abuse of discretion."); *accord Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005) (en banc).  On appeal, Printup has not challenged the district court's decision in this regard and thus has plainly failed to make the clear showing necessary for us to reverse the judgment.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.