RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0286p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

CHARLES BOZZO,

          *Plaintiff-Appellant*,

    *v.*

        No. 25-1199

JENNIFER NANASY, Discipline Coordinator, Michigan Department of Corrections; HEIDI E. WASHINGTON, Director, Michigan Department of Corrections,

          *Defendants-Appellees*.

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:24-cv-00624—Jane M. Beckering, District Judge.

Decided and Filed: October 17, 2025

Before: THAPAR, READLER, and HERMANDORFER, Circuit Judges.

———————————

## COUNSEL

**ON BRIEF:** Frank G. Becker, Southfield, Michigan, for Appellant. Jenni M. Scheid, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

———————————

## OPINION

———————————

READLER, Circuit Judge. Charles Bozzo was fired from his job as a correctional officer with the Michigan Department of Corrections after a coworker accused him of making harassing comments. Years later, he sued two MDOC employees under 42 U.S.C. § 1983, claiming that the pair violated Bozzo's constitutional rights in terminating him. The district court dismissed the action on statute of limitations grounds and for failure to state a claim. We affirm.

I.

We borrow the facts as alleged in the complaint. Beginning in 2013, Bozzo worked on-and-off as a correctional officer at the Michigan Department of Corrections. But his employment ended for good due to bad blood between him and Jane Doe, a fellow MDOC employee. At one point in time, the two had carpooled together to work. In 2017, however, Doe reported Bozzo for lewd and obscene comments made during their drives. Doe later reported Bozzo for other instances of misconduct. Upon learning of these complaints, Bozzo seemingly directed some "obscenities" at Doe when discussing her actions with fellow correctional officers. R.1, PageID 10–12. Once Bozzo's words made their way back to Doe, she reported him for that conduct, too.

The situation came to a head on June 19, 2019, when MDOC served Bozzo with a misconduct charge regarding his carpool comments and his later remarks about Doe in the workplace. The charge summarized the allegations against Bozzo as well as the MDOC rules his purported misconduct implicated. Five days later, MDOC held a disciplinary conference with Bozzo and his union representative. According to Bozzo, the conference was brief, amounting to little more than his representative making a short statement about Bozzo's employment and the charges. MDOC informed Bozzo of his termination on July 31, 2019.

Bozzo challenged that decision by invoking his collectively bargained right to arbitration. A three-day arbitration hearing was held ending on December 17, 2020. At the hearing, Jennifer Nanasy, MDOC's discipline coordinator, testified that MDOC applied its recently updated employee policies to Bozzo, which took a more stringent approach to harassment allegations. A few months later, on March 1, 2021, the arbitrator issued a ruling in favor of MDOC.

On December 18, 2023, Bozzo filed a complaint in federal court. Named as defendants were Nanasy as well as Heidi Washington, MDOC's director. He sued under 42 U.S.C. § 1983, alleging constitutional violations spanning the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments. In large part, Bozzo took issue with his arbitration hearing (where he claims he was "set up" using "surprise" testimony and "subjective" new policies) and with the arbitrator (who he claims relied on "falsehood[s]" and derived "significant income" from MDOC

arbitrations). *Bozzo v. Nanasy*, No. 23-cv-1316, Dkt. No. 1, PageID 13–15, 23 (W.D. Mich. Dec. 18, 2023).  After Bozzo failed to respond to defendants' motion to dismiss, the district court dismissed the action without prejudice for lack of prosecution.  Bozzo re-filed largely the same complaint on June 14, 2024.  Defendants again moved to dismiss, and the district court again granted their motion, this time on multiple grounds.  One, that Bozzo's claim was untimely under the statute of limitations.  And two, that Bozzo had forfeited his constitutional arguments save for his Fourteenth Amendment procedural due process claim, which failed to state a claim in any event.

Bozzo appealed.  As in district court, he advances only his procedural due process claim.  He asserts that the district court erred in dismissing the action as time-barred and that he stated a plausible claim for relief under § 1983.

II.

We review the complaint's dismissal de novo.  *Operating Eng'rs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 43 F.4th 617, 621 (6th Cir. 2022).  We take as true Bozzo's well-pleaded factual allegations as well as any reasonable inferences derived from those allegations.  Having done so, we then ask whether those allegations moved Bozzo's claims across the line from possible to plausible, thereby surviving dismissal.  *Forman v. TriHealth, Inc.*, 40 F.4th 443, 448 (6th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A.   Start with the threshold statute of limitations question.  Although the statute of limitations is an affirmative defense, an action remains subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if the complaint's allegations "affirmatively show that the claim is time-barred."  *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).  In that instance, a plaintiff can survive dismissal only by showing that an exception to the statute of limitations applies.  *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013).

Section 1983 claims borrow the limitations period applicable to personal injury actions under the law of the state in which they arose.  *Eidson v. State of Tenn. Dep't of Child.'s Servs.*,

510 F.3d 631, 634 (6th Cir. 2007).  The parties do not dispute that Michigan's three-year statute of limitations applies to this action.  *See Rapp v. Putnam*, 644 F. App'x 621, 625 (6th Cir. 2016) (citing *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam)); Mich. Comp. Laws Ann. § 600.5805(2).  But they do not agree on the date on which that three-year clock started ticking.

A bit of background, then, on claim accrual for § 1983 claims.  Although state law governs the duration of the limitations period, federal law dictates when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  On that front, the Supreme Court instructs us that the statute of limitations begins to run when the plaintiff has "a complete and present cause of action."  *Id.* (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).  Said differently, the limitations period commences "the first day that every element of a claim has occurred such that the plaintiff may sue in court over the claim."  *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024) (per curiam) (citing *Wallace*, 549 U.S. at 338).

Despite Supreme Court precedent suggesting otherwise, our Court's cases have applied a "discovery rule" to § 1983 claims.  Under that framework, a claim accrues when a "plaintiff knows or has reason to know of the injury which is the basis of his action."  *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)).  We have noted the apparent contradiction between the Supreme Court's occurrence-based rule and our discovery rule.  *See, e.g.*, *Reguli*, 109 F.4th at 885 (Murphy, J., concurring); *Snyder-Hill v. Ohio State Univ.*, 54 F.4th 963, 974 (6th Cir. 2022) (Readler, J., dissenting from the denial of rehearing en banc).  But we need not weigh in further on that tension today.  As both parties assume the discovery rule applies notwithstanding Supreme Court precedent, we take the case as presented to us.  *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).

Turn, then, to the timing issues underlying Bozzo's claim.  A "complete and present" "procedural due process claim" has two elements.  *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023). First, there must be a "deprivation by state action of a protected interest in life, liberty, or property."  *Id.*  Second, there must be "inadequate state process."  *Id.* (citing *Zinermon v. Burch*,

494 U.S. 113, 125 (1990)).  Taking these requirements together, a procedural due process claim is "complete" only once the "deprivation" and the State's failure to "provide due process" have both occurred.  *Id.* (quoting *Zinermon*, 494 U.S. at 126).

When do we deem those events to have transpired with respect to Bozzo?  Beginning with the required "deprivation," Bozzo alleges a loss of property occurring when his public employment was terminated.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–43 (1985) ("pretermination hearing[s]" before "deprivation"); *Farhat v. Jopke*, 370 F.3d 580, 597 (6th Cir. 2004) (describing terminated employee's "post-deprivation due process").  That date is often identifiable from employment records or the like.  *See Damsel v. Fisher*, 114 F.3d 1187, 1997 WL 328607, at *2 (6th Cir. 1997) (table) (per curiam).  Here, MDOC formally terminated Bozzo on July 31, 2019, "in a short correspondence."  R.1, PageID 16.  So Bozzo's "deprivation" occurred on that date.

As for the requisite process, "a plaintiff's injury accrues at the time that process was denied because 'the allegedly infirm process is an injury in itself.'"  *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.,* 839 F.3d 458, 461 (6th Cir. 2016) (quoting *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991)).  It follows that a plaintiff may have a "complete and present cause of action" before "the entity sued has . . . reached a 'final decision' on the underlying substantive issues."  *Id.* (citing *Printup v. Dir., Ohio Dep't of Job & Fam. Servs.*, 654 F. App'x 781, 784–88 (6th Cir. 2016)) (citation modified).  Consider, for example, our decision in *Printup*.  There, the plaintiff lost her job after a social services agency mistakenly labeled her a child abuser.  *Printup*, 654 F. App'x at 783.  She challenged that determination through an administrative hearing with the agency, which, if resolved in her favor, would have resulted in her reinstatement.  *Id.*  Although she was unsuccessful at that hearing, a state court later vindicated her claim on appeal.  *Id.*  The plaintiff then filed a procedural due process claim arising from the agency's initial mislabeling, asserting that her claim accrued when the administrative hearing officer affirmed the agency's mistaken decision.  *Id.* at 785.  We disagreed.  To our minds, the plaintiff's claim accrued when the alleged procedural mistakes resulted in her termination, before the administrative hearing officer simply upheld those mistakes.  *Id.* at 787–88.

As to Bozzo, he alleges a series of procedural violations at different points in time. For instance, he takes issue with MDOC's handling of Doe's complaints, which date back to the June 24, 2019, pre-termination conference. And he says those due process violations continued all the way up to his post-termination arbitration hearing, which ended on December 17, 2020. That latter date—December 17, 2020—was thus the latest possible date when Bozzo allegedly was denied due process. And as that date occurred after his termination in 2019, it is the point at which both elements of his due process claim had come to fruition, that is, the time at which Bozzo had a "complete and present cause of action." *Am. Premier Underwriters*, 839 F.3d at 461 (quoting *Wallace*, 549 U.S. at 388).

This conclusion is problematic for Bozzo. Measured from that date, Bozzo's June 14, 2024, complaint did not fall within the three-year statute of limitations. True, under Michigan law, Bozzo's original lawsuit would have tolled the limitations period during the six months before it was dismissed without prejudice. *See Heard v. Strange*, 127 F.4th 630, 633 (6th Cir. 2025) (citing Mich. Comp. Laws Ann. § 600.5856). But Bozzo filed that first complaint on December 18, 2023—one day after the three-year limitations period expired on December 17, 2023, meaning the first lawsuit did nothing to alter the limitations period. *See* Mich. Comp. Laws Ann. § 600.5805(2). As a result, his claim is time-barred on its face. *See Cataldo*, 676 F.3d at 547.

Bozzo disagrees. Invoking the discovery rule, he contends that his claims could not have accrued until he "fully realized" that he "was not afforded a fair grievance and constitutional process," which, he says, occurred on March 1, 2021, when the arbitrator issued a decision in MDOC's favor. Appellant Br. 7. Here, it bears reminding that our focus under the discovery rule is on when a "plaintiff knows or has reason to know of [his] *injury*." *Johnson*, 777 F.3d at 843 (emphasis added). And, again, the "injury" in a procedural due process claim is the "infirm process" that accompanies a deprivation. *Am. Premier Underwriters*, 839 F.3d at 461 (citing *Nasierowski*, 949 F.2d at 894). Bozzo had already been "deprived" of his job when he attended his arbitration hearing. And he does not allege that he was unaware of the supposed procedural problems at his arbitration hearing as it unfolded (e.g., the "surprise" witness, the arbitrator's "significant income" from MDOC arbitrations). R.1, PageID 17, 26. To the extent Bozzo's

allegations could be construed as criticizing the decision that followed, that amounts to "dissatisf[action] with the result," not the process. *Farhat*, 370 F.3d at 597. Because knowledge of *procedural* defects is what counts, the discovery rule does not change our conclusion as to the accrual date of Bozzo's claim. *See Printup*, 654 F. App'x at 787–88.

With his claim facially time-barred, Bozzo turns to various exceptions to the statute of limitations, beginning with equitable tolling. Bozzo "carries the burden of establishing [his] entitlement to equitable tolling." *Jackson v. United States*, 751 F.3d 712, 718–19 (6th Cir. 2014). But he confronts an immediate roadblock. We apply state tolling rules to § 1983 claims unless they are inconsistent with federal law. *Heard*, 127 F.4th at 634. That turns our attention to Michigan law, which does not permit common law equitable tolling of express limitations periods, including the three-year period at issue here. *See Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 679–80 (Mich. 2007) (citing Mich. Comp. Laws Ann. § 600.5805) ("[C]ourts are [not] free to cast aside a plain statute in the name of equity."); *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 556–57 (Mich. 2005); *Secura Ins. Co. v. Auto-Owners Ins. Co.*, 605 N.W.2d 308, 311 (Mich. 2000) (per curiam). Equitable tolling, it follows, is unavailable under the Michigan limitations provision at issue here. Nor does Michigan's preference for statutory tolling mechanisms to the exclusion of common law equitable tolling, standing alone, run afoul of federal § 1983 policy. *See Bd. of Regents v. Tomanio*, 446 U.S. 478, 488 (1980).

Even under federal law, we apply equitable tolling "sparingly," meaning that absent "compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000). Though we have applied varying approaches to assessing equitable tolling, the inquiry "often" boils down to whether a litigant "fail[ed] to meet a legally-mandated deadline due to unavoidable circumstances beyond that litigant's control." *Zappone v. United States*, 870 F.3d 551, 556–57 (6th Cir. 2017) (quoting *Graham-Humphrey's*, 209 F.3d at 560–61) (citation modified). Here, neither Bozzo's briefing nor his complaint specify any "compelling equitable considerations" that support tolling. *Graham-Humphrey's*, 209 F.3d at 561. And even if Bozzo's waiting on the arbitrator's decision could count (it would not), Bozzo still delayed nearly three years *after* that decision to file suit. So his failure to exercise "reasonable diligence"

would foreclose equitable tolling in any event. *Smith v. Davis*, 953 F.3d 582, 599 (9th Cir. 2020) (en banc) (rejecting "stop-clock approach" to equitable tolling); *see Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990) (no "automatic extension . . . by the length of the tolling period").

Bozzo also contends that by "exhausting [his] administrative remedies," he tolled the statute of limitations period. Appellant Br. 12. Yet Bozzo does not identify what administrative remedies he pursued. In any event, "the settled rule is that exhaustion of state remedies is *not* a prerequisite" to a § 1983 action. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2167 (2019) (citation modified). Only prisoners—who are required to exhaust—may receive tolling on that basis. *See Printup*, 654 F. App'x at 787 n.5 (citing *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982)); 42 U.S.C. § 1997e(a).

All in all, Bozzo's § 1983 claim is untimely on its face. And as he cannot establish an exception to the statute of limitations, his complaint was properly dismissed on this basis.

B. Even had the claim been timely, we would likewise agree with the district court that Bozzo failed to state a procedural due process claim, the lone theory from his complaint that he attempts to resurrect on appeal. As already stated, that claim has two elements: "deprivation by state action of a protected interest," and "inadequate state process." *Reed*, 143 S. Ct. at 961. The parties agree that Bozzo had a protected property interest in his employment. That leaves us to resolve whether he plausibly alleged "inadequate process."

In this termination context, we evaluate the process offered to Bozzo both before and after termination. Before termination, Bozzo must have had "some form of . . . hearing." *Loudermill*, 470 U.S. at 542. Rather than "a full evidentiary hearing," all that was necessary was an "initial check against mistaken decisions." *Id.* at 545. To clear that low bar, the hearing needed to include, at the very least: (1) "oral or written notice of the charges," (2) "an explanation of the employer's evidence," and (3) "an opportunity for the employee," here Bozzo, "to tell his side of the story." *Gilbert v. Homar*, 520 U.S. 924, 929 (1997) (citing *Loudermill*, 470 U.S. at 546). To take one example, in *Buckner v. City of Highland Park*, the employer's representative visited the plaintiff in the hospital, showed him the written allegations against

him, and asked him to comment in the presence of his union representative. 901 F.2d 491, 492, 495 (6th Cir. 1990). Despite the lack of formality, we emphasized that the plaintiff received a "chance to be heard." *Id.* at 495. That "critical element" ensured adequate pre-deprivation process. *Id.*

So too here. MDOC served Bozzo with a written misconduct charge summarizing his allegedly harassing comments and listing the MDOC rules he violated. Shortly thereafter, Bozzo, accompanied by his union representative, attended a disciplinary conference. There, his representative addressed briefly Bozzo's future employment and dismissal of the charges. MDOC terminated Bozzo one month later. But before his termination took place, Bozzo received notice of the allegations, MDOC's basis for bringing them, and a chance to speak up—everything due process requires before termination. *Gilbert*, 520 U.S. at 929.

Bozzo portrays the conference as little more than a "brief discussion." Appellant Br. 8. But, again, "a full evidentiary hearing" is not required at this stage. *Loudermill*, 470 U.S. at 545. An "opportunity to respond" is sufficient. *Buckner*, 901 F.2d at 496. And nowhere does Bozzo allege that MDOC limited his ability to speak on the matter.

With pre-termination due process satisfied, we turn our attention to whether MDOC followed through with sufficient post-termination process. At this latter stage, due process requires an "opportunity for a post-deprivation hearing before a neutral decisionmaker." *Farhat*, 370 F.3d at 596 (emphasis omitted). "At a minimum," Bozzo had to "be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him." *Rodgers v. 36th Dist. Ct.*, 529 F. App'x 642, 649 (6th Cir. 2013) (quoting *Carter v. W. Rsrv. Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985) (per curiam)). Doing so through arbitration procedures set forth in an employee's collective bargaining agreement satisfies those criteria. *Farhat*, 370 F.3d at 596 (citing *Bucker*, 901 F.2d at 497).

That is what happened here. Following his termination, Bozzo invoked his right to arbitration per his collective bargaining agreement. He then attended a three-day hearing before a neutral arbitrator. There, Bozzo had a representative acting as counsel, and he nowhere

disputes that he had a chance to present witnesses and evidence as well as the ability to challenge the evidence presented against him. That is, Bozzo enjoyed the minimal procedures needed for a post-termination hearing. Bozzo does claim that a "surprise" witness testified at the hearing, but he gives no indication as to whether or how that testimony breached procedure. R.1, PageID 17.

Rather than identifying precise aspects of the post-deprivation process with which he takes issue, Bozzo instead attacks the decisionmaker. Emphasizing what he sees as the lack of "neutrality and competence" displayed by the arbitrator, Appellant Br. 9, Bozzo alleges that the arbitrator earned "significant income" from handling other MDOC arbitrations. R.1, PageID 26. But that bare allegation does not plausibly suggest bias. *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009); *cf. Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 648 (6th Cir. 2005) (finding no "reasonable person" would conclude that arbitrator was "partial" simply because he arbitrated prior disputes involving the opposing parties). In a similar vein, he alleges that the arbitrator "relied on disproven falsehood[s]." Appellant Br. 9. Further, he adds, the arbitrator embraced "unwritten, ephemeral 'evolving standards,'" *id.*, a seeming reference to the new agency disciplinary policy applied to Bozzo's case. These claimed errors alone do not plausibly show that the arbitrator was biased against Bozzo, let alone some other procedural defect. Rather, Bozzo's insistence that the arbitrator misapprehended the law and facts suggests that he is simply "dissatisfied with the result." *Farhat*, 370 F.3d at 597. In other words, his gripes go to substance, not procedure. That does not suffice to plead a procedural due process claim.

Bozzo's other arguments are even less availing. We see no evidence that the district court imposed a higher pleading standard than that required by Rule 12(b)(6). *See* R.12, PageID 110 (citing *Twombly*, 550 U.S. at 555). And we see no merit in his remaining points, many of which were raised for the first time in his reply brief, and all of which are meritless. *See Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citation modified). In sum, we agree with the district court that Bozzo failed to state a viable § 1983 claim.

*       *       *       *       *

We affirm.