RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0249p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

AMERICAN PREMIER UNDERWRITERS, INC.;
AMERICAN FINANCIAL GROUP, INC.,
          *Plaintiffs-Appellants*,

          *v.*

NATIONAL RAILROAD PASSENGER CORPORATION,
          *Defendant-Appellee*.

┐
│
│
│
│
│
│  No. 15-3703
│
│
│
│
│
┘

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:08-cv-00346—Sandra S. Beckwith, District Judge.

Decided and Filed:  October 5, 2016

Before: GILMAN, GIBBONS, and STRANCH, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:**  Nathaniel R. Jones, Michael L. Cioffi, John P. Curp, Lori B. Nuckolls, BLANK ROME LLP, Cincinnati, Ohio, for Appellants.  Pierre H. Bergeron, Rachael A. Harris, SQUIRE PATTON BOGGS (US) LLP, Cincinnati, Ohio, for Appellee.

───────────────

**OPINION**

───────────────

     RONALD LEE GILMAN, Circuit Judge.  American Premier Underwriters, Inc. (APU) holds shares of stock in National Railroad Passenger Corporation (Amtrak) pursuant to the Rail Passenger Service Act of 1970 (RSPA), Pub. L. No. 91-518, 84 Stat. 1327.  Under § 415(b) of the Amtrak Reform and Accountability Act of 1997 (ARAA), 49 U.S.C. § 24304 note, Amtrak was required to redeem all of its stock held by APU at fair market value by October 1, 2002.

On May 19, 2008, APU filed a complaint against Amtrak, asserting seven claims based on Amtrak's failure to redeem the stock.  (American Financial Group, APU's parent company and the beneficial owner of the stock at issue, is also a party to this lawsuit.  We will refer to both entities collectively as APU.)  The United States District Court for the Southern District of Ohio, in 2011, granted Amtrak's motion to dismiss in its entirety.  In 2013, this court upheld the dismissal of six of the claims and remanded for the district court to decide whether the statute of limitations barred the remaining claim.  On remand, the district court concluded that the remaining claim was indeed barred and granted Amtrak's motion to dismiss.

The parties agree that the applicable statute of limitations is three years.  On this second appeal, the sole issue is the proper accrual date for APU's remaining claim.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.    Factual background

APU holds 5.2 million shares of Amtrak common stock.  Section 415(b) of the ARAA mandated that "Amtrak shall, before October 1, 2002, redeem all common stock previously issued, for the fair market value of such stock."  In 2000, Amtrak proposed fulfilling this obligation by offering to redeem APU's common stock for three cents per share.  APU rejected Amtrak's offer on November 2, 2000.  This offer, according to APU, was "*de minimis*" and did not adequately represent the fair market value of the stock.  The October 1, 2002 statutory deadline passed without Amtrak making any further offer to redeem the shares.

APU and Amtrak negotiated from 2000, when Amtrak made its initial offer, until January 2008, when Amtrak declared that the shares were worthless and that further negotiations would be futile.  The parties never reached a settlement of their dispute.

### B.    Procedural background

Seven months after APU filed its lawsuit against Amtrak, the district court stayed the case pending arbitration proceedings that are irrelevant to this appeal.  The arbitration panel ultimately determined that the dispute was not arbitrable, and the district court lifted the stay.

In June 2011, the district court granted Amtrak's motion to dismiss all seven of APU's claims. APU appealed, but this court affirmed the dismissal of all but one claim. *Am. Premier Underwriters, Inc. v. Nat'l Passenger R.R. Corp.*, 709 F.3d 584 (6th Cir. 2013). On the one remaining claim, we held that § 415(b) of the ARAA gave APU a property interest in the redemption of the Amtrak shares at fair market value and that APU had stated a claim for equitable relief for the deprivation of this property interest without procedural due process. *Id.* at 595. We then remanded the case for the district court to determine whether the statute of limitations barred the procedural-due-process claim. *Id.*

In February 2015, the district court granted Amtrak's motion to dismiss, ruling that APU's complaint was barred by the statute of limitations. APU then filed a motion for reconsideration, which the district court denied. This timely appeal followed.

## II. ANALYSIS

### A.     Standard of review

We review de novo the grant of a motion to dismiss on statute-of-limitations grounds. *In re Vertrue, Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474, 478 (6th Cir. 2013). Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iShares Tr.*, 769 F.3d 399, 403 (6th Cir. 2014).

### B.     The accrual date of APU's claim

#### 1.   *A claim accrues when a plaintiff knows or has reason to know of the injury; for procedural-due-process claims, the injury accrues when process is denied*

The statute of limitations begins to run when a plaintiff "knows or has reason to know of the injury which is the basis of his action." *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* Courts determine the accrual date of a claim by asking "what event should have

alerted the typical lay person to protect his or her rights." *Id.* (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000)).

In procedural-due-process claims like APU's, a plaintiff's injury accrues at the time that process was denied because "the allegedly infirm process is an injury in itself." *See Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991). Even if the entity sued has not yet reached a "final decision" on the underlying substantive issues, a plaintiff has reason to know of its procedural-due-process claim at the moment process is denied. *See id.* (finding that the plaintiff's injuries accrued when a local zoning council convened a critical session that departed from the required notice and comment procedures, even though the council had not yet reached a final decision on the plaintiff's development plans for his property); *see also Printup v. Dir., Ohio Dep't of Job & Family Servs.*, No. 15-3906, -- F. App'x --, 2016 WL 3595726, at *3-5 (6th Cir. June 30, 2016) (finding that the plaintiff's procedural-due-process claim against a social-services agency accrued not when the agency's hearing officer issued a final decision on the plaintiff's status as an employee, but when the plaintiff was initially terminated under allegedly deficient procedural circumstances).

*Nasierowski* involved a question of ripeness, but it applies in the present case because the Supreme Court has held that a claim accrues for statute-of-limitations purposes at the same time that it ripens: "[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action . . . [;] that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (brackets, citations, and internal quotation marks omitted) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). Although this court has limited *Nasierowski* to cases involving procedural claims only, *see Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 572 (6th Cir. 2008), this limitation is irrelevant in the present case because APU's sole remaining claim on appeal is based on the alleged denial of procedural due process.

### 2. *APU should have known of its procedural-due-process claim when Amtrak missed the statutory deadline to redeem its shares*

*Nasierowski* clearly applies in this case, so the accrual date is the date on which Amtrak denied adequate process to APU. *See Nasierowski*, 949 F.2d at 894. As the district court

persuasively found, any denial of process occurred at the latest by October 1, 2002, when Amtrak missed the statutory deadline to redeem its stock. APU attempts to avoid this conclusion by (1) arguing that the statutory deadline for redemption of Amtrak's shares does not affect the accrual date of APU's constitutional claim, and (2) claiming that a plaintiff must receive "final notice" of the denial of process before a claim accrues, and that APU did not receive such notice until Amtrak terminated negotiations in 2008. Both of these arguments are without merit.

APU asserts in its brief that it learned of its injuries not through Amtrak's initial low-value offer or Amtrak's failure to meet the statutory deadline, but through Amtrak's cessation of negotiations in 2008. But APU's complaint belies this claim. APU asserts its right to "due process of law in connection with the valuation of its common shares pursuant to section 415(b)" of the ARAA. Each alleged deprivation of process involves Amtrak's purported departure from § 415(b), a provision with a clear deadline. Most tellingly, APU seeks a declaratory judgment that "because Amtrak and APU could not agree on fair market value *within the time fixed by the Amtrak Reform and Accountability Act of 1997*, Amtrak should have commenced eminent domain proceedings pursuant to RPSA." (Emphasis added.)

The process to which APU claims a right should thus have begun while Amtrak was "implement[ing]" § 415(b) by valuing its shares held by APU or, at the latest, as soon as Amtrak failed to meet the statutory redemption deadline on October 1, 2002. APU's argument on appeal that it was unaware of its injury until 2008 is unpersuasive. We need not decide whether APU's claim accrued in 2000 when Amtrak valued the shares or in 2002 when the statutory deadline passed; the claim is barred either way because APU did not file its complaint until 2008, far more than three years after either possible accrual date.

In addition, APU admits that October 1, 2002 would be the accrual date if this case involved a statutory enforcement action by the U.S. Attorney General. But APU insists that the accrual date is different for its constitutional claim, despite citing no caselaw to explain why the accrual dates should differ. APU's argument also contradicts how a procedural-due-process claim is analyzed. Standing alone, the Constitution does not create protected property interests for the purposes of a procedural-due-process claim. *Brock v. McWherter*, 94 F.3d 242, 245 (6th Cir. 1996). Property interests are instead "created and their dimensions . . . defined by existing

rules or understandings that stem from an independent source," such as a state statute. *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

This court has previously held that § 415(b) "creates a property interest, on behalf of APU, in a fair-value redemption of Amtrak shares." *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 709 F.3d 584, 595 (6th Cir. 2013). Because § 415(b) creates APU's property interest, the statutory deadline determines the extent of APU's rights. Indeed, APU cites this court's conclusion to argue that "the October 1, 2002 deadline relates and is relevant to APU's due process claim – not as a statutory accrual date – but as a manifestation of Congress's limitations on the discretion of Amtrak to rescind the benefit of an objective fair-value redemption." APU essentially asserts that the deadline limits Amtrak's ability to infringe on APU's statutory rights, but does not limit APU's ability to sue almost six years later. We decline the invitation to let APU have it both ways.

The district court's discussion of *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331 (11th Cir. 2006), provides another persuasive argument in support of the conclusion that APU should have known of its procedural-due-process claim when the October 1, 2002 deadline passed. *Hamilton* involved a challenge to the Secretary of the Interior's failure to designate a critical habitat for two endangered species before the Endangered Species Act's deadline for such a designation. *Hamilton*, 453 F.3d at 1333. The Eleventh Circuit held that the statute of limitations began to run on the day following the deadline, reasoning that "a reasonably prudent plaintiff would have been aware of the failure of the Secretary to act" by that time. *Id.* at 1335. In APU's case, the district court noted that, like the statutory provision at issue in *Hamilton*, § 415(b) of the ARAA contained "a fixed point of time at which APU knew or should have known of Amtrak's failure to act." Although we are not aware of any opinions of this court addressing the statute-of-limitations consequences of failing to meet a statutory deadline, we adopt this common-sense approach for cases such as this where a reasonably prudent plaintiff would know that its legal rights were affected by the passing of a statutory deadline.

Finally, APU cites out-of-circuit caselaw to argue that a procedural-due-process claim does not accrue until "a plaintiff is given final notice that she would not receive further process," and that APU did not receive such notice until negotiations ended in 2008. *See Knox v. Davis*,

260 F.3d 1009, 1015 (9th Cir. 2001) (finding that the plaintiff received "final notice" when the government denied her requests for a hearing); *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 318, 320 (9th Cir. 1991) (holding that the plaintiff did *not* receive "final" and "unequivocal" notice" of termination more than a month into the future because there was a possibility that the employer might change its decision).

We are unaware of any procedural-due-process cases in which this court has held that "final notice" is required for the statute of limitations to begin to run. To the extent that the "final notice" requirement means that the government agency must issue a final decision before a procedural-due-process claim accrues, the alleged requirement would appear to be in tension with this court's holding in *Nasierowski* that a procedural-due-process claim accrues when process is denied. *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 894 (6th Cir. 1991).

APU, moreover, has never asserted any procedural-due-process right that would require Amtrak to engage in negotiations after the statutory deadline. Its asserted procedural-due-process claim instead relates only to the valuation of the stock and to Amtrak's failure to institute eminent domain proceedings once the statutory deadline lapsed. Amtrak's decision to cease negotiations in 2008, therefore, would not be the moment that APU received "final notice" of the deprivation of process at issue. Instead, Amtrak's failure to meet the clear statutory deadline in 2002 should have been sufficient to give APU "final notice" that it would not receive process under § 415(b). We thus have no need to consider whether accrual of a procedural-due-process claim requires "final notice" of the deprivation of process because, for the due-process claim under consideration, any "final notice" occurred by 2002, and the statute of limitations has clearly run.

As the district court persuasively noted, accepting APU's argument that the statute of limitations did not begin to run until 2008 would "contravene[] the basic purpose of a limitations period" by allowing APU to wait to bring suit until it "became satisfied that it had been harmed enough." If APU wanted to preserve its claim while attempting to resolve the dispute, it should have secured a tolling agreement with Amtrak.

**C.     The district court did not act improperly in granting Amtrak's motion to dismiss the complaint on statute-of-limitations grounds**

In its brief, APU argues that its complaint raises a genuine dispute of material fact sufficient to survive a motion to dismiss. APU also laments that it has received no opportunity to engage in discovery, claiming that "discovery will support its allegations about the accrual date being in January 2008."

True enough, courts should not dismiss complaints on statute-of-limitations grounds when there are disputed factual questions relating to the accrual date. *See, e.g., Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (noting that a Rule 12(b)(6) motion is usually an "inappropriate vehicle" for dismissing a claim on statute-of-limitations grounds because the statute of limitations is an affirmative defense). Examples of such disputed factual questions include claims that the defendant fraudulently concealed facts, thereby preventing the plaintiff from learning of its injury, *see, e.g., Firestone v. Firestone*, 76 F.3d 1205, 1209-10 (D.C. Cir. 1996), and complex issues about whether information in the plaintiff's possession sufficed to alert it of the claim, *see, e.g., Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (10th Cir. 2015). But where one can determine from the face of the complaint that the statute of limitations has run, dismissal is appropriate. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008) (holding that the claim was clearly barred by the three-year statute of limitations because the complaint alleged facts indicating that the plaintiffs had actual knowledge of their claim more than three years before the complaint was filed).

APU incorrectly argues that "[i]n this case, the parties present opposing conclusions of fact" regarding the accrual date. But there is no disputed question of fact regarding the dates of the three key events in this case. APU and Amtrak agree that (1) Amtrak valued APU's shares at three cents each in 2000, (2) the deadline for redeeming the shares lapsed on October 1, 2002, and (3) Amtrak terminated negotiations with APU in 2008. The parties dispute only which of these three dates has legal significance as the accrual date. This is a question of law, not of fact, so resolution of the issue on a motion to dismiss was appropriate.

## III.  CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.