**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0488n.06

Case No. 18-6079

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 19, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KHANDAKAR AHAD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| ROBERT WILKIE, Secretary, Department of | ) | TENNESSEE |
| Veterans Affairs, and DEPARTMENT OF | ) | |
| VETERANS AFFAIRS, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: SUTTON, COOK, and THAPAR, Circuit Judges.

SUTTON, Circuit Judge. Dr. Khandakar Ahad began working as an ophthalmologist at a Veterans Affairs hospital in 1992. Since then, he has performed wrong-site eye surgeries—operating on the healthy eye—several times. Three days after his last misstep, the hospital launched an investigation, after which it revoked Ahad's surgery privileges. The revocation of privileges limited him to non-surgical patient treatment, but it did not reduce his pay or change his formal position. After unsuccessfully challenging this decision internally and after filing a complaint with the Equal Employment Opportunity Commission, he filed this lawsuit, claiming the revocation amounted to (1) retaliation under Title VII for a lawsuit he filed three years earlier against the hospital and (2) a due process violation. The district court rejected the claims as a matter of law. We affirm.

Ahad has been an ophthalmologist at the Alvin C. York Campus of the Veterans Affairs Hospital in Murfreesboro, Tennessee since 1992. In 2001, he operated on a patient's left eye when he was supposed to operate on the patient's right eye, and without obtaining the patient's written consent for surgery on *either* eye. The hospital investigated the incident and ultimately decided he had not violated its policies.

In June 2005, Ahad, a Muslim, complained to the Equal Employment Opportunity Commission that the hospital had refused to provide him with a reasonable religious accommodation—attending a mid-day worship service on Fridays—and penalized him for his religion by giving him a poor performance review. He also attributed this alleged discrimination to his age, race, and sex.

Later that year, in September 2005, Ahad began operating on a patient's healthy right eye instead of his afflicted left eye. Ahad discovered the error during the procedure when he consulted his supervisor about an unrelated equipment problem. The hospital declined to discipline Ahad, giving him another chance.

But the same problem happened again. On March 4, 2008, Ahad began operating on a patient's healthy left eye instead of his damaged right eye. After discovering his mistake, he switched course and completed the operation on the correct eye, leaving the patient temporarily blind in both eyes.

The hospital began an investigation on March 7. By late April, the hospital's internal investigative body concluded that Ahad had operated on the wrong eye for a third time. It recommended permanently removing him from surgery duty and closely supervising his patient treatment. The hospital officially implemented both recommendations on July 30, 2008.

Ahad challenged this decision internally, all to no avail. He then filed a complaint with the Equal Employment Opportunity Commission, also to no avail. At that point, he filed this lawsuit against the Secretary of the Department of Veterans Affairs and the agency itself, claiming the agency's revocation of his privileges amounted to (1) retaliation under Title VII for a lawsuit he filed three years earlier against the hospital and (2) a due process violation. The district court rejected each claim as a matter of law.

*Title VII.* Case law tells us to consider Title VII retaliation claims like this one in three steps. We start by asking whether Ahad has established a prima facie case of retaliation. That means he needs to show that (1) he engaged in a protected activity, (2) the hospital knew about the protected activity, (3) the hospital took a materially adverse action against him, and (4) the protected activity caused the adverse action. *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018).

If Ahad makes this prima facie showing, step two requires the hospital to produce a legitimate, nondiscriminatory reason for its action. *Id.* at 777.

If the hospital offers that explanation, step three requires Ahad to show the hospital's reason is "a pretext to hide unlawful retaliation." *Id.* (quotation omitted). Ahad may show pretext by showing that the hospital's reason (1) has no basis in fact, (2) did not actually motivate the hospital, or (3) was insufficient to warrant the adverse employment action. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007).

It's doubtful that Ahad has made a prima facie showing, especially when it comes to causation. Lacking any evidence that the hospital revoked his surgical privileges because of his prior lawsuit, he leans entirely on the alleged temporal proximity between the filing of his 2005 EEOC complaint and the removal of his surgery privileges. Our cases do not speak with one voice

3

about whether a claimant can move beyond summary judgment based only on evidence of causation that turns on timing. *Compare Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013), *with Kuhn v. Washtenaw County*, 709 F.3d 612, 628 (6th Cir. 2013). But even the best cases for Ahad rely on temporal proximity of no more than four months or so between the protected activity and the alleged retaliatory act. In this instance, the only cognizable protected activity is the religious discrimination complaint he filed with the EEOC on June 21, 2005, claiming that the hospital discriminated against him based on his religion by keeping him from attending religious services on Fridays and giving him a poor performance review. Yet the earliest alleged retaliatory act is the investigation of his last wrong-eye surgery on March 7, 2008. That's much too long—under any of our cases—to justify an inference of causation that by itself could overcome a summary judgment motion.

But we need not rely on that ground alone to resolve the case. As it turns out, there is an even more straightforward ground. The hospital has put forward a legitimate, nondiscriminatory reason for reducing his surgical privileges: the unchallenged reality of serial wrong-site eye surgeries. Ahad, by the way, disputes whether the 2001 incident counts as a wrong-site surgery. Even so, he admits that he operated on the wrong eyes in 2005 and 2008. Those two mishaps by themselves suffice to resolve the case. Ahad has not produced any evidence that the hospital's suspension was not motivated by serial wrong-eye operations. Lacking a genuine issue of material fact on this point, the district court correctly granted the hospital's motion for summary judgment on Ahad's Title VII claim. *Rogers*, 897 F.3d at 771.

Ahad's only response to this conclusion—that two other doctors retained their surgical privileges after performing a wrong-site surgery—does not take him far. It's true that, when an employer overlooks a similar mistake by a similarly situated employee, that suggests that the error

4

by the claimant was not the true reason for the disciplinary action. *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 503 (6th Cir. 2009). But the comparison must be precise. "[T]he individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quotation omitted); *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (applying *Ercegovich* to Title VII claims).

The trouble with Ahad's argument is that the other doctors did not stand in his shoes. Each of the other doctors performed just one wrong-site surgery, while Ahad admittedly performed at least two. He has not identified any other doctors who performed serial wrong-site surgeries like he did and nonetheless retained their surgical privileges. In truth, his comparator evidence confirms that no retaliation was afoot. Had the employer been in a retaliatory mood, it would have removed Ahad's surgical privileges after the first wrong-eye surgery. But instead it treated him like everyone else by giving him another chance. It was only after failing that second chance that the employer removed his surgery privileges. The district court correctly rejected Ahad's Title VII claim as a matter of law.

*Due Process.* Ahad claims that the Veterans Affairs hospital revoked his privileges without following its internal procedures and, for that reason, violated his rights under the Fifth Amendment's Due Process Clause. At the district court, the parties debated whether Ahad had raised a freestanding due process claim—with the government arguing that Ahad never separately pled it in the complaint and Ahad responding that he mentioned due process in support of his Title VII claim. On its own initiative, the district court cut the Gordian knot. It held that, even if Ahad had raised such a claim, it was plainly time barred by the one-year statute of limitations.

5

Ahad challenges that ruling on the ground that the district court did not give him notice of the argument and a chance to respond to it. That is a fair point. Generally speaking, district courts should give parties an opportunity to respond to a timeliness issue. *See Truitt v. County of Wayne*, 148 F.3d 644, 646–47 (6th Cir. 1998). But that truth runs into another truth. We usually do not make district courts redo a proceeding unless the plaintiff shows prejudice from the mistake. The key problem is that Ahad has not shown any error in the statute of limitations conclusion.

In the district court's view, federal civil rights actions, like Ahad's due process claim, are governed by the forum State's statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). That means Tennessee's one-year limit applies. *Montgomery v. Carter County*, 226 F.3d 758, 772 (6th Cir. 2000); Tenn. Code Ann. § 28-3-104(a). When does that one-year clock start running? For procedural due process claims, it starts when process is denied. *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016). The hospital terminated Ahad's surgical privileges after an allegedly defective process on July 30, 2008. But he did not sue the hospital until almost six years later—on May 6, 2014.

Ahad, notably, does not identify a single misstep in this conclusion. At no point does he explain how his claim was timely.

The most he can argue in response is that the hospital allegedly forfeited the argument by not raising a statute of limitations defense in its answer to the complaint. But that was a problem of Ahad's own making. He did not identify a separate constitutional tort claim under the Due Process Clause, which explains why the hospital did not raise timeliness as a defense at the outset. No prejudice thus arose from the district court's statute of limitations ruling.

We affirm.